MUTUAL LOAN COMPANY *vs.* GEORGE J. MARTELL.

Suffolk.    November 24, 1908. — January 6, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Assignment,* Of wages.  *Constitutional Law,* Police power, Equal protection of the laws, Unconstitutionality of part of statute.  *Small Loans Act.  Husband and Wife.  Wages.*

St. 1908, c. 605, § 7, providing that no assignment of or order for wages to be earned in the future, to secure a loan of less than $200, shall be valid against the employer of the assignor until such assignment or order is accepted in writing by the employer, and § 8 of the same chapter, providing that no such assignment or order, when made by a married man, shall be valid unless the written consent of his wife is attached thereto, are constitutional as a proper exercise of the police power in legislating for the public welfare.

The provisions of St. 1908, c. 605, §§ 7, 8, that no assignment of or order for wages to be earned in the future, to secure a loan of less than $200, shall be valid against the employer of the assignor until such assignment or order is accepted in writing by the employer, and that no such assignment or order, when made by a married man, shall be valid unless the written consent of his wife is attached thereto, are not unconstitutional in making a distinction between assignments to secure loans of money and assignments as security for necessaries or other property furnished or to be furnished.

The provisions of St. 1908, c. 605, §§ 7, 8, that no assignment of or order for wages to be earned in the future, to secure a loan of less than $200, shall be valid against the employer of the assignor until such assignment or order is accepted in writing by the employer, and that no such assignment or order, when made by a married man, shall be valid unless the written consent of his wife is attached thereto, are not made unconstitutional by the provision of § 6 of the same chapter excepting from the operation of the statute " national banks, all banking institutions under the supervision of the bank commissioner, and loan companies and loan associations established by special charter and placed under said supervision."

The provisions of St. 1908, c. 605, §§ 7, 8, that no assignment of or order for wages to be earned in the future, to secure a loan of less than $200, shall be valid against the employer of the assignor until such assignment or order is accepted in writing by the employer, and that no such assignment or order, when made by a married man, shall be valid unless the written consent of his wife is attached thereto, are so far separable from the provisions contained in the sec-

tions of the same statute preceding § 6, that it may be assumed that the Legislature would have enacted them even if they had thought that the sections preceding § 6 would be held to be of no effect, and are constitutional whether such preceding sections are constitutional or not, no opinion in regard to the constitutionality of such preceding sections being intimated.

KNOWLTON, C. J.    This is an action of contract to recover the amount of two promissory notes for $27.50 each, which were given by two different persons, with an assignment by each of wages to be earned in the future in the defendant's service.    The declaration contains two counts, one for the amount of each note, and in each count it is averred that the assignment was recorded in the clerk's office of the city of Boston and a copy of it served on the defendant, and that the assignor earned wages to the amount of the note in the service of the defendant, which the defendant is bound, under the assignment, to pay to the plaintiff. The case comes before us upon an agreed statement of facts, under which a judgment for the defendant was ordered in the Superior Court and the plaintiff appealed.

The defence is founded upon the St. 1908, c. 605, of which §§ 7 and 8 are as follows:

" Section 7.    No assignment of or order for wages to be earned in the future, to secure a loan of less than two hundred dollars, shall be valid against an employer of the person making said assignment or order, until said assignment or order is accepted in writing by the employer, and said assignment or order and the acceptance of the same have been filed and recorded with the clerk of the city or town where the party making said assignment or order resides, if a resident of the Commonwealth, or in which he is employed, if not a resident of the Commonwealth.

" Section 8.    No such assignment of or order for wages to be earned in the future shall be valid when made by a married man, unless the written consent of his wife to the making of such assignment or order is attached thereto."

Section 6 has this provision: " National banks, all banking institutions which are under the supervision of the bank commissioner, and loan companies and loan associations established by special charters and placed under State supervision shall be exempt from the provisions of this act."

Neither of these assignments was accepted in writing by the

employer as required by § 7, and the assignor in the second assignment was a married man whose wife did not consent in writing to the making of the assignment. The question presented for our consideration is whether §§ 7 and 8 are constitutional.

These sections interfere with the rights of the assignor and assignee to contract with each other, which right of contract, in general, is secured to all our citizens under the Fourteenth Amendment to the Constitution of the United States, as well as under the Constitution of Massachusetts. Such an interference by law with one's right to manage his property and to make contracts in relation to it and to pursue any proper vocation is in violation of such constitutional rights, unless it can be justified upon an independent ground. The defendant contends that there is such justification, in the present case, in the enactment of this statute by the Legislature in the exercise of the police power.

The State may legislate for the public health, the public safety, the public morals and the public welfare, in the exercise of this power. But, in balancing this right of the State against the constitutional right of the individual to personal liberty, it is often difficult to draw the line between permissible and impermissible legislation. The subject has been considered in many cases. *Commonwealth* v. *Strauss,* 191 Mass. 545. *Commonwealth* v. *Pear,* 183 Mass. 242. *Commonwealth* v. *Interstate Consolidated Street Railway,* 187 Mass. 436. *Welsh* v. *Swasey,* 193 Mass. 364. *Squire* v. *Tellier,* 185 Mass. 18. *Commonwealth* v. *Perry,* 155 Mass. 117. *Wyeth* v. *Cambridge Board of Health, ante,* 474. *Field* v. *Barber Asphalt Paving Co.* 194 U. S. 618, 621. *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369. *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589. *Lochner* v. *New York,* 198 U. S. 45, 53.

In the present case we have to inquire how far the welfare of the community requires an interference by way of regulation with the right of workmen to dispose of their wages to be earned in the future. For many years statutes have been enacted in this Commonwealth, and in other States, with a view to secure such wages against the bankruptcy of employers and other hazards. To a certain amount they are made a preferred claim

in statutes relating to insolvency and bankruptcy. R. L. c. 163, § 118. U. S. St. 1898, c. 541, § 64. To a certain amount they are exempt from attachment by trustee process. R. L. c. 189, § 27. They are required by law to be paid weekly, and the statute requiring it has been held constitutional. R. L. c. 106, § 62. *Opinion of the Justices,* 163 Mass. 589. It has been deemed important that they be received by the employee regularly and promptly after they are earned.

In *International Text-Book Co.* v. *Weissinger,* 160 Ind. 349, the court, in deciding that a statute which forbids altogether the assignment of future earnings of an employee was constitutional, used this language : " A large proportion of the persons affected by these statutes of labor are dependent upon their daily or weekly wages for the maintenance of themselves and their families. Delay of payment or loss of wages results in deprivation of the necessaries of life, suffering, inability to meet just obligations to others, and, in many cases, may make the wage-earner a charge upon the public. The situation of these persons renders them peculiarly liable to imposition and injustice at the hands of employers, unscrupulous tradesmen, and others who are willing to take advantage of their condition. Where future wages may be assigned, the temptation to anticipate their payment, and to sacrifice them for an inadequate consideration, is often very great. Such assignments would, in many cases, leave the laborer or wage-earner without present or future means of support. By removing the strongest incentive to faithful service, — anticipation of pecuniary reward in the near future, — their effect would be alike injurious to the laborer and his employer." Without deciding, as the Supreme Court of Indiana did, that these considerations would furnish the Legislature constitutional authority for forbidding all assignments of future wages, we think they justify a strict regulation of the right to make such contracts. The requirement that they be recorded is certainly reasonable. It tends to lessen the opportunity of wage earners to be dishonest in procuring credit on the faith of their expected possession of earnings, as they might be if unrecorded assignments were outstanding. The requirement that the order or assignment be accepted in writing by the employer tends to diminish the risk of his refusal to pay, involving litigation the result of which

might be loss of employment by the wage earner and injury to the business of the employer. Then, too, this requirement might operate as a check upon the rapacity of unscrupulous money lenders who are inclined to take advantage of the needs of employees. If the Legislature saw an advantage to the community from this provision, we cannot say that they were acting beyond their constitutional authority in enacting the law.

Nor can we say that they might not find grounds for a distinction between assignments to secure loans of money and assignments as security for necessaries or other property furnished or to be furnished. The occasions for making assignments as security for necessaries may be far more pressing than for making them to obtain money, and the risk of wasting that which is obtained may be much less in one case than in the other. The statute is not unconstitutional because it deals only with security for loans and does not include security for other debts.

Section 8 presents a similar but more difficult question. A married man is bound by law to support his wife. If he is a wage earner, although she has no legal title to his wages, she has an interest in the right use of them. If there are such risks of his making an improper disposition of them by assigning them to secure the payment of money that he borrows for unnecessary purposes as to justify the Legislature in limiting and regulating his exercise of this right, might they not regulate it by requiring the consent of his wife as a prerequisite to the validity of his assignment? A strong argument can be made in favor of the plaintiff's contention on this point. But on the whole we are of opinion that the Legislature might look chiefly to the ordinary relations between husband and wife under the law, and adopt this form of regulation as salutary in its application to most members of the class with which they were dealing. The principles that are applicable to § 7 require us to hold § 8 to be constitutional.

It is contended that these sections are unconstitutional because of the provision of § 6 that renders the act inapplicable to certain banks, banking institutions and loan companies. The argument is that this makes a discrimination without reason, and thus deprives others of the "equal protection of the laws," secured by the

Fourteenth Amendment to the Constitution of the United States. This would be so if no reason could be discovered by the Legislature for making the discrimination. But seemingly the Legislature might decide that the dangers which the statute was intended to prevent would not exist in any considerable degree from the business of national banks, or other banking institutions under the supervision of the bank commissioner, or from that conducted by a loan company established by a special charter and placed under the supervision of this commissioner. The Legislature may be supposed to have known the kind of business done and likely to be done by these corporations, and they may have believed rightly that the business done by them would not need regulation in the interest of employees or employers. This was held by the Supreme Court of Delaware in an elaborate opinion in a similar case. *State* v. *Wickenhoefer*, 64 Atl. Rep. 273.

A large number of States have enacted statutes regulating to a greater or less degree the assignment of future earnings as security for debts. Several decisions have been made upholding the constitutionality of laws securing to employees payment of their wages in money. *Knoxville Iron Co.* v. *Harbison*, 183 U. S. 13. *Hancock* v. *Yaden*, 121 Ind. 366. *State* v. *Peel Splint Coal Co.* 36 W. Va. 802, 822. The Supreme Court of Illinois has made a contrary decision. *Massie* v. *Cessna*, June, 1908.*

In this Commonwealth the St. 1905, c. 308, limiting the right to make assignments of future earnings to a period not exceeding two years, has been held constitutional. *McCallum* v. *Simplex Electrical Co.* 197 Mass. 388. So also has the statute regulating the business of pawnbrokers. *Commonwealth* v. *Danziger*, 176 Mass. 290. We are of opinion that these two sections of the statute are constitutional.

The first part of the statute we have no occasion now to consider. The last part of the act is so far separable from the other that the Legislature probably would have enacted it by itself, if they had supposed that they could not constitutionally enact the other. Without intimating an opinion in regard to the other, we are of opinion that this can stand by itself. *Edwards* v. *Bruorton*, 184 Mass. 529. *Commonwealth* v. *Petranich*, 183

---

* On October 26, 1908, a motion for a rehearing of this case was granted.

Mass. 217. *Commonwealth* v. *Anselvich*, 186 Mass. 376, 379. *Commonwealth* v. *Hana*, 195 Mass. 262.

*Judgment affirmed.*

The case was submitted on briefs.

*P. W. Carver & A. G. Carver*, for the plaintiff.

*O. C. Scales*, for the defendant.

*G. A. Ham*, for the Mill Men's Association of Greater Boston, filed a brief by leave of court.