Rathmell, J.
The first case is an action brought by a stockholder of the Peoples Salary Loan Company, a corporation formed for the purpose of purchasing and loaning money on salaries and wage earnings, and seeks to enjoin said company from complying . with the requirements of an act of the General Assembly to regulate and license such a business (102 O. L., p. 469), on the ground *442 that said act is unconstitutional and void, and that compliance with said act in the way of paying a license fee is a misapplication and unlawful dissipation of the assets of the company.
The second is an error proceeding seeking to reverse judgment rendered against plaintiff in error by the police court of the city of Columbus, on the charge of his engaging in the business of making loans upon chattels and personal property; and purchasing and making loans upon salaries and wage earnings; and that on or about the 7th day of August, 1911, plaintiff in error made a loan to one Sleade, secured by a chattel mortgage on chattel property and by an assignment of his wage earnings as an employe of the Ferris Steam Motor Works; neither said conveyance nor said assignment being signed by Sleade’s wife — he being a married man; .and that Sharp had not obtained a license to engage in such a business, contrary to the statute in such case made and provided.
Both of said actions involve the constitutionality of the act of the General Assembly referred to, passed May 31st, 1911, and found in 102 O. L., 469.
Section 1 of the act provides:
“No person, firm or corporation except banks and building and loan associations shall engage or continue in the business of making loans upon chattels or personal property of any kind whatsoever, or of purchasing or making loans upon salaries or wage earnings, without first having obtained a license so to do from the Secretary of State.”
It is claimed that the exception of banks and building and loan associations creates an unreasonable discrimination between persons, firms or corporations engaged in the same business, and thereby violates the constitutional guaranty for equal protection of the law, found in Section 1, Article XIV of the Federal Constitution; and in Section 1, Article I of the Bill of Rights, and is not of uniform operation as required by Section 26, Article II of the Constitution of the state.
That the business of loaning money upon chattels or personal property, and of purchasing or making loans upon salaries or *443 wage earnings; is one which the state, in the exercise of her police powers, has the right to reasonably regulate, while not fully conceded, is not seriously challenged.
In view of the fact that the courts in other jurisdictions have pretty generally sustained legislation, under the police power, on similar subject-matter; and that our own court in the case of Sanning v. City of Cincinnati, 81 O. S., 142, has approved legislation on the subject, we consider that the right of reasonable regulation of such a business by the Legislature is hardly a matter to be questioned.
The state in the exercise of the police power within reasonable limits may distinguish, select and classify subjects of legislation, if the classification be not unreasonable, unjust or arbitrary ; and a statute bearing alike on all individuals of each class with uniformity does not deny the equal protection of the law.
Field, Justice, in Bartier v. Connolly, 113 U. S., 27, speaking of the Fourteenth Amendment, says:
“Class legislation discriminating against some and favoring others is prohibited; but legislation which in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects all persons similarly situated, is not within the amendment.”
That proper classification and legislation under the limitations stated is not an invasion of the constitutional guaranty of the right of equal protection of the laws is supported by many eases, a few of which are: Minneapolis Ry. Co. v. Beckwith, 129 U. S., 27; Field v. Barber Asphalt Co., 194 U. S., 621; Gentsch v. State, ex rel, 71 O. S., 151.
Is the exception of banks and building and loan associations in the act an unreasonable or arbitrary classification?
Whether a particular classification upon which discriminating legislation is based is a reasonable or arbitrary one must depend to a very large extent upon the nature and purpose of the legislation.
It was held in State v. Wichenhoefer (Del.), 64 Atl., 273, that an act providing for licensing persons to charge more than legal *444 interest on loans not exceeding $100 was not unconstitutional because it exempted from its provisions national banks, state banks and trust companies.
In that case the court remarked:
“The character and standing of the excepted parties, the nature and conduct of their business, and existing laws which were peculiarly applicable to them, furnished a fair and sufficient reason for the classification.”
In State v. Hurlburt, 32 Conn., 232, an act prohibited everybody except a national bank, a trust company chartered by the state, and a pawn broker from charging interest on loans at a greater rate than fifteen per cent.; held: that the statute was not in violation of the state and federal Constitution guaranteeing the equal protection of the laws. That the General Assembly in regulating usury had the right to discriminate between different classes of money lenders and borrowers, provided there was nothing apparently unreasonable'in creating-the'distinction and all members of each class were treated in the same manner.
In Re Home Discount Co., 147 Fed. Rep., 538, an act of the state of Alabama providing among other things that all persons engaged in the business of money broker or loaning money or taking security therefor by bills of sale, mortgages on, or conveyances of liens of any kind on personal property or personal effects or other personal security, should express in the instrument securing such loan the rate of interest, the date of the loan, the fact that the instrument is taken for a loan of money, a minute description of said property and if household goods from whom purchased, the date when the loan is due and should file the instrument for record. Also one section providing that the act should not apply “to the business of banking and loans when the amount exceeds $75.” Held: the Legislature had not unjustly discriminated between the class whose conduct the act regulated, and those whose conduct it left unregulated.
The court in the opinion says:
“Loans by. banks and bankers under $75 and loans over that amount no matter by whom made were rarely secured by an as *445 signment of future wages or a lien upon household goods, and were not productive of the evil which the statute seeks to cure. The Legislature knew that the taking of the security named by one class of lenders had almost invariably brought forth evil, while the same loans on the same security by another class in ‘the business of banking’ had seldom, if ever, been harmful to the public welfare. The law makers in devising the remedy had to consider the different habits and conduct of man in their occupation as to their loans, in order to apply an intelligent and just preventative and in doing so necessarily discriminated between these classes according to their well known habits and customs in the matter. * * * If the practice of one class of money lenders makes such precaution necessary as to them it would'be' going an unwarrantable length to hold that the state police power must either leave them entirely alone or else provide the same regulation regardless of any need for them, for like loans made by all other classes of money lenders.”
In Dewey v. Richardson, 206 Mass., 430, a provision regulating the business of making small loans of $200 or less upon which a rate of interest greater than twelve per cent, per annum is charged, and prohibiting the carrying on of such business without obtaining a license was held not unconstitutional by the exemption front the provisions of the act of “national banks, all banking institutions which were under the supervision of the bank commissioner, and loan companies, and loan associations established by special charter and placed under said supervision.”
The court said:
"This objection was considered in the case of Mutual Loan Co. v. Martell, 200 Mass., 482, which arose under the same statute and it was held that it was not fatal to the validity of the act.
"The Legislature might find that these classes of corporations being subject to official supervision under the law even if they did some business of the kind described in the statute would not be likely to conduct their business oppressively in dealing with small borrowers.”
In Marmet v. State, 45 O. S., a law requiring a license of the owners of vehicles used upon the streets of a city of .the first grade of first class, exempting farmers marketing the products. *446 of their farm, was held not in conflict with the Constitution on contention of unjust discrimination.
Legislation relative to the Sunday laws involving the exercise of the police power of the state, affords illustration of classification not violative of the provision guaranteeing equal protection of the laws.
It is pointed out as one basis for distinction and classification that banks and building and loan associations are already subject to statutory regulation in inspection. In a number of cases in other states, some of which have been noted, exception such ás has been attempted here, has been approved as legitimate classification for purposes of regulative legislation.
On the whole it appears fair to assume that the nature and conduct of the business of the excepted parties, and the existing laws applicable to them in the way of regulation and inspection of their business, furnish a fair and sufficient reason for the classification by the law making power, and that the statute is not in violation of the equality clauses of the Constitutions by reason of the exceptions.
“A law is uniform in its operation when every person who is brought within the relation and circumstances provided for is alike affected by the law. It must have a uniform operation upon all those included within the class upon which it purports to operate.” Senior v. Ratterman, 44 O. S., 661, 678.
The classification npt appearing arbitrary, and the statute operating uniformly as to all individuals in the same class, all persons similarly situated, and engaging in the business sought to be regulated by the statute, it is not in violation of Section 26, Article II of the state Constitution.
Section 4 provides:
“No such person, firm, or corporation so licensed shall receive any assignment of salary or wages signed in blank, but all blank spaces shall be filled in with ink or typewritten with the proper names and figures, showing the name of the firm, person or corporation by whom the person' making the conveyance or assignment is employed. If the borrower is married the contract con *447 veyanee or assignment shall be void unless it also contains the name of the husband or wife as the case may be of the borrower.”
It is contended that this section places an improper restriction on the right to contract if the borrower be a married person.
While generally every citizen has a right freely to contract for the price of his labor, services or property, such liberty is not absolute and universal; and it will not be contended but that the state may restrain some individual from all contracts and all individuals from some contracts, in a proper case. Private rights exist subject to public welfare.
In Chambers v. City of Cincinnati, 11 C.C.(N.S.), 273, a provision of an ordinance requiring that, if the pledgor is a married man, his wife must sign the application for the loan, was held of no effect. We are not favored in the report with the reason for this holding.
In International Text Book Co. v. Wissinger, 160 Ind., 349, a statute prohibiting the assignment of future wages by employes is held not void as an unreasonable restraint upon the liberty of the citizen or as depriving him of his property without due process of law.
The restriction in the act under consideration is far less than that sustained by the Indiana court.
In Mutual Loan Co. v. Martell, 200 Mass., 482, a statute requiring a license of any one engaging in the business of making loans on household furniture or other personal property exempt from attachment or by assignment of wages for less than $200 contained the following provision:
“No such assignment of an order for wages to be earned in the future shall be valid when made by a married man, unless the consent of his wife to the making of such assignment or order is attached thereto.”
The regulations as to wife’s consent was held valid. Enowlton, Judge, said:
“A married man is bound by law to support his wife. If he is a wage earner although she has no legal title to his wages, she has an interest in the right use of them. If there are such risks *448 of his making an improper disposition of them by assigning them to secure the payment of money that he borrow for unnecessary purposes as to justify the Legislature in limiting and regulating his exercise of this right, might they not regulate it by requiring the consent of his wife as a pre-requisite to the validity of his assignment? A strong argument can be made in favor of the plaintiff’s contention on this point. But on the whole we are of opinion that the Legislature might look chiefly to the ordinary relations between husband and wife under the law and adopt this form of regulation as salutary in its application to most members of the class with which they are dealing. ’ ’
The reasoning of the court in the foregoing case is persuasive. The husband or wife has a.n interest in the proper use of the wages of the other; and the marital relations are such that we can not say that the legislative provision for regulating the assignment of salary or wages by a borrowing husband or wife is plainly in conflict with the Constitution, or invalid.
Applying the foregoing holding of the validity of the act to the cases under consideration—
(1) In the Cain case, the demurrer is not well taken and sustained.
(2) In the Sharpe ease, we find no error in the record, and the judgment is affirmed.