# Speilberger Bros. *v.* Brandes.

*Assumpsit.*

(Decided Feb. 8, 1912.   58 South. 75.)

1. *Words and Phrases; Wages; Salary.*—As a term, "salary" has a meaning more extensive than the term "wages." "Wages" is usually restricted to sums paid as hire or reward to domestic servants or to artisans, mechanics, laborers, etc., while "salary" has reference to compensation for officers of corporations, public officials, and other employees of a like class.

2. *Assignments; Future Wages and Salaries; Validity.*—The provisions of General Acts 1911, p. 370, considered and it is held that the word "salary" as used in such act is synonymous with the word "wages," and hence, does not apply to the monthly compensation of a bookkeeper.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by M. D. Brandes against Speilberger Bros. upon an assignment of wages contract. Judgment for plaintiff, and defendants appeal. Affirmed.

The contract declared on is as follows: "State of Alabama, Jefferson County. Whereas, I have this day purchased from M. D. Brandes one gold, hunting case, seventeen jewel Elgin watch, No. 3,647,318, at and for the sum of $75; and whereas, said watch has this day been delivered to me by the said M. D. Brandes; and whereas, I am now employed by the said Speilberger Bros. in the city of Birmingham, at a salary of $75 per month, in the capacity of bookkeeper for said firm; and whereas, my salary under said employment begins on the 10th day of each month, and ends on the 10th day of each month: Now, therefore, in the consideration of the delivery to me of said watch, I do hereby transfer, set over, sell, and assign to said M. D. Brandes all of my salary to be earned while in said employment of

[Speilberger Bros. v. Brandes.]

Speilberger Bros., beginning on July 10, 1911, and ending on August 10, 1911. I hereby authorize said M. D. Brandes to collect said salary from my said employers, Speilberger Bros., and to deliver the same to said Speilberger Bros. upon the payment of said salary. In witness whereof, I have hereunto set my hand and seal this the 10th day of July, 1911. [Signed] William Bishop. Witnessed by J. J. Kennedy." The complaint averred that the defendant had had notice of said assignment of said salary, and that Bishop performed the services for which he was employed, etc. The demurrers raise the question that the assignment is void, under section 1 of the act approved April 11, 1911. This matter is also set up by plea, to which demurrers were filed, setting up the unconstitutionality of said. act.

The following is Acts 1911, p. 370, referred to in the opinions:

"An act to regulate the assignment of unearned salaries and wages of persons in the state and to prescribe conditions under which such assignments may be made.

"Section 1. Be it enacted by the Legislature of Alabama, That all assignments hereafter made by any person of salaries or wages, to be earned in the future, shall be absolutely void. The provisions of this act shall also apply to orders given by employees covering the whole or part of future wages.

"Sec. 2. Nothing in this act shall affect the validity of assignments of wages to be earned within thirty days from the date of such assignment when given to secure payment for groceries, clothing, medicine, insurance, medical attendance, or house rent.

"Sec. 3. That nothing in this act shall be construed to affect the right of the laborer under section 4743 of the Code of Alabama of 1907 to assign his in-

terest in the crop to be raised during the year such an assignment is made.

"Sec. 4. The provisions of this act shall take effect on and after the first day of July, 1911.

"Approved April 11, 1911."

STALLINGS & DRENNEN, for appellant. If the Acts of 1911, p. 370, is valid, then the rulings of the trial court were erroneous, and the reversal will follow. . The act was not good as its title did not indicate that the act was to prohibit the assignment of wages.—(*Ex parte Bird,* 84 Ala. 17) is the contention of the appellee, but we insist that the title clearly indicates that assignments may be made under certain conditions, and that fact necessarily implies that they cannot be made in the absence of those conditions. In our judgment, the act is clearly within the police power of the legislature, and that it is without technical defect.—4 Mayf. 742; *Quartlebaum v. The State,* 79 Ala. 1.

M. M. ULLMAN, for appellee. The act here to be considered is clearly unconstitutional as violative of section 45.—*A. G. S. v. Reid,* 124 Ala. 252; *Randolph v. Painters Co.,* 106 Ala. 501; *Ex parte Pollard,* 40 Ala. 99; *Boyd v. The State,* 53 Ala. 606; *Sate v. David,* 130 Ala. 148. The right to labor and earn money and to dispose of it before receiving it are property rights within the meaning of the Constitution.—16 L. R. A. 492; 22 L. R. A. 340; 65 L. R. A. 602. The privilege of contracting with reference to property is a liberty and property right protected by the Constitution.—29 L. R. A. 79; 54 L. R. A. 838; 127 U. S. 678; 165 U. S. 578; 190 U. S. 169. An assignment of wages to be earned in the future under existing employment is valid.—*Welborn v. Buck,* 114 Ala. 227; *Rodijkeit v. Andrews,* 5 L. R. A. (N. S.) 564. In this instance, the legislature ex-

ceeded its police power in denying the right to contract with reference to property.—*Rodge v. Kelly,* 40 South. 552; *Hyland v. Sharpe,* 41 South. 264; 6 Atl. 354; 113 U. S. 27; 111 U. S. 746.

PER CURIAM.—This case was submitted to the Supreme Court, and was considered by that court; the conclusions reached by a majority and a minority, respectively, of the members of that court being stated in the opinions which are copied below. Thereafter it came to the notice of that court that the case is one within the jurisdiction of this court, and it was duly transferred. The conclusion expressed in the following opinion of Mr. Justice ANDERSON has been adopted by this court.

ANDERSON, J.—This appeal involves the constitutionality vel non of the Act of 1911, p. 370, relating to the assignment of unearned wages, and which the reporter will set out in the report of this case.

It is suggested that the act is repugnant to section 45 of the Constitution, because the body thereof is not germane to, or is broader than, the title; that the title provides only for the regulation, while the act prohibits, except as to 30 days wages for limited purposes. There is no merit in this suggestion, as the title does more than to merely regulate. It also prescribes conditions under which assignments of wages can be made at all, thus clearly indicating that certain kinds may be prohibited entirely. If the title prescribes conditions under which said assignments may be made, it necessarily carries with it a prohibition of such not coming within the prohibited conditions. Moreover, for reasons hereinafter set out, the title is broader than the act, as it deals with wages and salaries and the act

deals only with wages. Nor does this render the law repugnant to section 45 of the Constitution. It deals with wages, and which is clearly expressed in the title, and if it does not deal with something else also, as set out in the title, this would not be fatal to the act. The title gives notice that wages will be dealt with, and, if the act did not deal with salaries also, no one has been deceived, in so far as the act dealt with wages, and as to which the title gave notice.

The act indiscriminately deals with all wages, and whether covered by an existing contract of employment or not. If the assignment relates to unearned wages or salaries not under an existing contract of employment, the right or interest attempted to be assigned would be contingent and not coupled with a present interest. The wages assigned could have no active or potential existence, and the assignment would be void independent of the statute.—*Purcell v. Mather,* 35 Ala. 570, 76 Am. Dec. 307; *Skipper v. Stokes,* 42 Ala. 255, 94 Am. Dec. 646. An assignment, however, of wages to be earned under an existing contract of employment, made in good faith, and for a valuable consideration, would be good unless prohibited by a valid statute.—*Wellborn v. Buck,* 114 Ala. 277, 21 South. 786. Therefore, in order to give the act in question any field of operation, it must be construed as relating to wages to be earned under an existing contract of employment.

Section 35 of the Constitution says: "That the sole object and only legitimate end of government is to protect the citizen in the enjoyment of life, liberty and property, and when the government assumes other functions, it is usurpation and oppression." The right of every man to do what he will with his own, not interfering with the reciprocal rights of others, is accepted among the fundamentals of our laws."—Cooley on

Const. Law, 385. The act in question interferes with
the rights of the assignor and assignee to contract with
each other, which right of contract, in general, is se-
cured to all our citizens under the federal and state
Constitutions. Such interference by law with one's
right to manage his property and to make contracts in
relation to it and to pursue any proper vocation is in
violation of such constitutional right, unless it can be
justified under an independent ground. The appellant
contends that there is such justification in the pres-
ent act as the enactment of same by the Legislature
was properly within the legitimate exercise of the po-
lice power. The power of the state is a most important
power, essential to its very existence, and enforces the
protection of the lives, health and property of her citi-
zens, the maintenance of good order, and the preserva-
tion of the public morals.—*A. U. T. Co. v. W. U. T. Co.*,
67 Ala. 26, 42 Am. Rep. 90; *Van Hook v. Selma*, 70 Ala.
361, 45 Am. Rep. 85. "The first right of a state, as of a
man, is self-protection, and with the state that right
involves the universally acknowledged power and duty
to enact and enforce all such laws not in plain conflict
with some provision of the state or federal Constitution
as may rightly be deemed necessary or expedient for
the safety of its people."—*Knoxville Iron Co. v. Harbi-
son*, 183 U. S. 13, 22 Sup. Ct. 1, 46 L. Ed. 55. As was
said in the case of *Mutual Loan Co. v. Martell*, 200
Mass. 482, 86 N. E. 916, 128 Am. St. Rep. 446: "The
state may legislate for the public health, the public
safety, the public morals, and the public welfare, in
the exercise of this power; but in balancing this right
of the state against the constitutional right of the indi-
vidual to personal liberty it is often difficult to draw
the line between permissible and impermissible legisla-
tion" In speaking of the public powers of the state, it

was said in the case of *Massie v. Cessna,* 239 Ill. 352,
88 N. E. 152, 28 L. R. A. (N. S.) 1108, 130 Am. St.
Rep. 234: "The laws which the Legislature may enact
in the exercise of that power are laws which have a ten-
dency to promote the public comfort, health, safety,
morals, or welfare, or which have a tendency to prevent
some recognized evil or wrong." "The police power of
the state is that power which enables it to promote the
health, comfort, safety and welfare of society, but it is
not without its limitations.   Legislative acts passed in
pursuance of it must not be in conflict with the Con-
stitution, and must have some relation to the end
sought to be accomplished; that is to say, to the com-
fort, welfare, or safety of society.   Where the osten-
sible object of an enactment is to secure the public
comfort,  welfare,  or  society, it must appear to be
adapted to that end.   It cannot invade the rights of
persons and property under the guise of a mere police
regulation when it is not such in fact; and, where such
an act takes away the property of a citizen or inter-
feres with his personal liberty, it is the province of the
courts to determine whether it is really an appropriate
measure for the promotion of the comfort, safety, and
welfare of society."—*People v. Steele,* 231 Ill. 345, 83
N. E. 237, 14 L. R. A. (N. S.) 365, 121 Am. St. Rep.
323.   The Indiana court, in the case of *International
Text-Book Co. v. Weissinger,* 160 Ind. 349, 65 N. E.
521, 98 Am. St. Rep. 334, 65 L. R. A. 599, upheld a
statute prohibiting the assignment of unearned wages,
but which did not include salaries or except there-
from the few absolute necessaries as excepted by the
act in question.   The Massachusetts court has also
upheld a statute, which did not prohibit the assign-
ment of all salaries or wages, but which forbade the
assignment of unearned wages to secure a loan of less

than $200, unless the assignment be in writing, accepted by the employer and recorded, and, when made by a married man, he must get the written consent of his wife. This statute was one of regulation, and not of prohibition, and while the court in the case of *Mutual Loan Co. v. Martell,* 200 Mass. 482, 86 N. E. 916, 128 Am. St. Rep. 446, quotes approvingly from the Indiana case, supra, the reason there given for holding that the statute there considered was intended to remedy existing wrongs and evils and tended to promote the interest and welfare of the laboring class, it declined to follow it to the extent of deciding that the Legislature would have the authority, under the Constitution, to forbid the assignment of all unearned wages, but held that the reasons urged would justify strict legislative regulation.

The Illinois court in dealing with a statute to prevent the assignment of salaries and wages said: "The right to labor for and to render services to another, and the right to dispose of the compensation to be received for so doing, are property rights within the meaning of the language just quoted from the constitution.—*Frorer v. People,* 141 Ill. 171 [31 N. E. 395] 16 L. R. A. 492; *Braceville Coal Co. v. People,* 147 Ill. 66 [35 N. E. 62] 22 L. R. A. 340, 37 Am. St. Rep. 206; *Mallin v. Wenham,* 209 Ill. 252, 70 N. E. 564, 65 L. R. A. 602, 101 Am. St. Rep. 233. It is at once apparent, upon an examination of this statute, that it abridges the right of the man who earns a salary and the right of the man who earns wages to contract with reference thereto. Notwithstanding this fact, appellee contends that the act in question is not prohibited by the Constitution, for the reason that it is referable to the police power of the state. The laws which the Legislature may enact in the exercise of that power are laws which

have a tendency to promote the public comfort, health, safety, morals, or welfare, or which have a tendency to prevent some recognized evil or wrong.—*Ritchie v. People,* 155 Ill. 98 [40 N. E. 454] 29 L. R. A. 79, 46 Am. St. Rep. 315; *Chicago v. Netcher,* 183 Ill. 104 [55 N. E. 707] 48 L. R. A. 261, 75 Am. St. Rep. 93; *Noel v. People,* 187 Ill. 587 [58 N. E. 6616] 52 L. R. A. 287, 79 Am. St. Rep. 238; *People v. Steele,* 231 Ill. 340 [83 N. E. 236] 14 L. R. A. (N. S.) 3661, 121 Am. St. Rep. 321. It is urged that wage earners compose a class of inhabitants of the state, who, when they desire to borrow money and secure the same by the assignment of their wages earned or to be earned, become victims of men engaged in the business of loaning money at usurious rates, who are commonly denominated 'loan sharks;' that, when the wage earner finds it necessary to borrow money upon such security, he is unable to deal with the money lender upon an even footing; that the latter is able to exact usury, and to practice various like wrongs and impositions upon him by reason of his poverty, and sometimes by reason of his improvidence; and that this creates a condition of affairs which the Legislature may remedy by the exercise of the police power. While we think this evil exists, it is yet apparent, upon a careful investigation of this statute, that it is too broad in its terms to be justified as an exercise of the police power for the purpose of mitigating or remedying the wrong at which it is aimed.

It applies not only to wages, but also to salaries. 'Wages,' in its ordinary acceptation, has a less extensive meaning than 'salary.' 'Wages' is usually restricted to sums paid as hire or reward to domestic or menial servants and to sums paid to artisans, mechanics, laborers, and others employed in various manual occupations, while 'salary' has reference to the compensa-

tion of clerks, bookkeepers, other employes of like
class, officers of corporations, and public officials.—2
Standard Dict. p. 1573; *In re Stryker,* 158 N. Y. 526,
53 N. E. 525, 70 Am. St. Rep. 489. In this state sala-
ries in excess of $5,000 per annum are not unusual. It
cannot be said that an officer of a corporation who is in
the enjoyment of a salary of $20,000 per annum is or
may be the victim of the evil at which this statute is
aimed, and yet his salary is plainly within the terms
of the act. Counsel for appellee intimate that a bank
president or the head of a great commercial enterprise
requires the same protection in this respect as a wage
earner. We have not been able to regard this sugges-
tion as seriously made. A bank president who desires
to borrow money does not need protection from a 'loan
shark,' unless he be mentally deficient or morally de-
linquent. A very limited exercise of the power of ob-
servation is sufficient to demonstrate that as a borrow-
er he is not in the same class as the laborer who works
for $2 per day. This statute, in so far as it would tend
to make effective the right of the wage-earner
to receive the full benefit of the wages earned by
him, is like unto the statute which prefers la-
borers' and servants' claims in certain instances,
like unto the statute which provides that no per-
sonal property shall be exempt from execution
issued for the collection of the wages of any
laborer or servant, and like unto the statute which
provides that, in a suit brought by 'a mechanic, arti-
san, miner, laborer or servant or employee' for his or
her 'wages' earned and due, the plaintiff may, under
certain conditions, recover, in addition to the wages,
an attorney's fee for the prosecution of the suit. It is
to be observed that these statutes all pertain to wages,
and not salaries. The statute last above referred to is

the act of June 1, 1889.—Hurd's Rev. St. 1908, p. 192, c. 13, § 13. Its validity has been assailed upon the ground that it is special legislation, conferring a right upon persons therein specified to attorney's fees, that was not given to other persons; but this court held that the enumeration, which is broad enough to include all the wage earners, and which includes none but wage earners, is an enumeration of persons composing a class, upon which the right given by the statute might be conferred without violation of the Constitution.— *Vogel v. Pekoc,* 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491. We have recently referred to that case with approval.—*Manowsky v. Stephan,* 233 Ill. 409, 84 N. E. 365. The reasoning of the *Vogel Case* would seem to lead to the conclusion that wage earners are the proper objects of legislation which would tend to protect them from the evil which this statute is designed to obviate. Such an act would not be rendered invalid by the fact that it placed reasonable regulations upon the right to assign wages to secure an indebtedness, and prescribed a reasonable method to be pursued in making the assignment effective. It has been recently so held by the Supreme Court of Massachusetts in reference to the sections of a statute regulating the assignment of wages.—*Mutual Loan Co. v. Martell,* 200 Mass. 482, 86 N. E. 916, 128 Am. St. Rep. 446. It is true that many persons who are salaried receive compensation not greater in amount by the month or year than the compensation received by many wage earners. Whether a statute protecting a salary not greater in amount than a certain sum per week or month, or protecting a portion of a salary which portion is not greater than a certain sum per month or week, would be held valid, is a question not here presented. The statute now under consideration is invalid because it vio-

lates the provision of our Constitution which has been invoked by limiting the right of persons earning the higher salaries to assign or transfer their salaries in such manner as they see fit; there being nothing in the public policy of the state requiring or warranting such abridgment of their right, and nothing requiring a statute giving to such persons the benefit that might with entire propriety be given to wage earners by an act in reference to the assignment of wages."—*Massie v. Cessna*, 239 Ill. 352, 88 N. E. 152, 28 L. R. A. (N. S.) 1108, 130 Am. St. Rep. 234. This case is not in conflict with the Indiana and Massachusetts cases, as the act there considered is much broader and includes both salaries and wages, and as to which there seems to be a well-defined distinction, and we would no doubt follow this holding, if our act included all salaries indiscriminately as distinguished from wages, and would not hesitate to condemn the act in so far as it relates to salaries, and entirely if the bad part could not be stricken so as to leave the good part a complete and independent law in and of itself.

It is a cardinal rule of judicial construction to uphold an act of the Legislature, unless it is clear that it has transcended its authority, and when an act is reasonably susceptible of two constructions, one of which will violate the Constitution and one which will not, it must be construed so as to harmonize with the Constitution. While we realize that there is a distinction between salaries and wages, yet the act in question is so worded and framed as to indicate a legislative intent to deal with wages only and the use of the word "salaries" as there used was intended to be synonymous with wages. It is true the words are used conjunctively in the title, but they are used in the alternative in section 1, which indicates that the Legislature did not

bear in mind a distinction in the meaning of the words, and used the word "salaries" as meaning "wages." It is also evident, from a further reading of the act, that the Legislature used "salaries" as meaning "wages," and not "wages" as including "salaries," for in speaking of orders, in the last part of section 1, the word "wages" is used alone, and not alternatively or conjunctively with "salaries." The act in section 2 deals alone with wages, and does not mention salaries. It is therefore manifest from a consideration of the whole act that the Legislature was dealing with wages alone, and did not intend to prohibit the assignment of salaries, as generally and properly distinguished from "wages." The act being intended to protect "wage earners"—that is, a class who render domestic or menial service, artisans, mechanics, laborers, and others employed in various manual occupations as distinguished from those who earn salaries, such as clerks, bookkeepers, officers of corporations, and others with employment of like character—is not repugnant to state or federal Constitutions, and its enactment was a reasonable exercise of the police power of the state. Says the Indiana court in the case of *International Co. v. Weissenger, supra*: "The reasons for such legislative supervision and control are readily found in the number and situation of ordinary laborers and employes. According to the last census, the number of wage earners employed in manufacturing and mining industries alone in this state was 155,956. The amount of wages paid to them annually is stated at $66,847,317. The census report is but partial and imperfect, as a large number of companies and corporations engaged in manufacturing and mining failed to make the returns required from them. No statistics are furnished by the census of the number of wage earners employed in

other occupations besides those of manufacturing and mining. The figures herein stated are sufficient, however, to show how large a portion of the citizens of this state fall within the classification of wage earners. A large proportion of the persons affected by these statutes of labor are dependent upon their daily or weekly wages for the maintenance of themselves and their families. Delay of payment or loss of wages results in deprivation of the necessaries of life, suffering, inability to meet just obligations to others, and in many cases may make the wage earner a charge upon the public. The situation of these persons renders them peculiarly liable to imposition and injustice at the hands of employers, unscrupulous tradesmen, and others who are willing to take advantage of their condition. Where future wages may be assigned, the temptation to anticipate their payment, and to sacrifice them for an inadequate consideration, if often very great. Such assignments would, in many cases, leave the laborer or wage earner without present or future means of support. By removing the strongest incentive to faithful service— the expectation of pecuniary reward in the near future —their effect would be alike injurious to the laborer and his employer. It is clear that the object of the act of 1899, supra [Acts 1899, p. 193; Burns' Ann. St. 1901, §§ 7059, 7059c], was the protection of wage earners from oppression or fraud on the part of others, and from the consequences of their own weakness, folly, or improvidence. We cannot say that no just ground existed for such legislative interference for so commendable a purpose."*International Co. v. Weissinger,* 160 Ind. 353, 65 N. E. 523, 65 L. R. A. 601, 98 Am. St. Rep. 337-338. Moreover, should we be in error, in holding that the act does not apply to salaries as distinguished from wages, and is unconstitutional in so far as it pre-

vents the assignment of salaries indiscriminately, salaries could well be discarded from the act, and we would still have a valid law. It is well settled that when a statute contains valid and invalid provisions, and the invalid parts can be stricken from the act and leave an enactment, complete within itself, sensible, capable of being executed and wholly independent of that which is rejected, the enactment will be upheld and enforced as to that which is valid.—*Harper v. State*, 109 Ala. 32, 19 South. 857. Nor is it essential to the validity of the valid part that the rejected part was not in a separate and distinct section or sections.—*State v. Davis*, 130 Ala. 148, 30 South. 344, 89 Am. St. Rep. 23. The test is whether or not the unconstitutional part of the law can be rejected and leave an act complete within itself, sensible, and wholly independent of that which is rejected. With salaries stricken out of the present act we have a complete law relating to the assignment of unearned wages. Nor can we say that the exception as to 30 days wages in favor of the laborer for the necessaries therein mentioned transcends the state or federal Constitutions. It is not vicious class legislation, but a wise and salutary provision, giving the wage earner the right to procure the necessary articles essential to sustain him while bringing the wages into existence. The laborers must be fed, clothed, housed, and given medical attention in order to toil and earn wages, while he can wait 30 days or longer for the articles not excepted from section 2 of the act. Neither is the exception as to insurance fatal to the act, because an unjust or unwise discrimination. Many wage earners are engaged in dangerous employment, and insurance, life, accident, or health benefits are frequently essential to prevent some of them and their families from becoming

a burden and charge upon the community.—*Mutual Company v. Martell, supra.*

The complaint being for a salary due Bishop as a clerk, and not for wages as covered by the act, was not subject to the demurrers interposed thereto. Nor was the special plea setting up the act as a defense available as against the sum claimed in the complaint. It is true that the said plea was not subject to the grounds of demurrer interposed thereto, but as said plea could not be amended so as to make it a good defense, without a departure from the defense therein attempted, the action of the court in erroneously sustaining the demurrers to same was error without injury.—*Sunflower Co. v. Turner Supply Co.,* 158 Ala. 191, 48 South. 510, 132 Am. St. Rep. 20.

The judgment of the city court is affirmed.

Affirmed.

McCLELLAN and SOMERVILLE, JJ., concur in the conclusion and in the opinion. SAYRE, J., concurs in the conclusion that the case should be affirmed, but is of the opinion that the act is unconstitutional. SIMPSON and MAYFIELD, JJ., think that the act covers both wages and salaries, and that it is not unconstitutional, and that the judgment of the trial court should be reversed, and therefore dissent. DOWDELL, C. J., not sitting.

SIMPSON, J. (dissenting). Webster's International Dictionary defines "salary" as (originally, salt money given to soldiers) "recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services; fixed regular wages, as by the year, quarter, or month; stipend." He defines "wage" as (1) a gage or pledge or security, etc. (Obs.) (3) "In gen-

eral, that which is given as a recompense or requital,"
etc. (4) "That which is pledged or paid for work or
other service; pay—now chiefly in the plural," etc.
The Century Dictionary defines "wage," as (1) gage or
pledge. (2) "That which is paid for service rendered;
what is paid for labor; hire—now usually in the plu-
ral." And in a note it is stated: "Distinguished (but
somewhat vaguely) from salary." It defines "salary"
as "the recompense or consideration stipulated to be
paid to a person periodically for services, usually a
fixed sum to be paid by the year, half year, or quarter."
From an examination of the numerous cases cited in 7
Words & Phrases, 6290, 6291, and 8 Words & Phrases,
7369, et seq., while there are decisions which draw a
distinction, yet there are a number where the two words
have been held synonymous. So there does not seem
to be any clear line between the two words which would
justify this court in holding that the Legislature in-
tended to draw a distinction between the two. Refer-
ring to the reasons which some courts have given for
the distinction I cannot see why one who receives $100
a month for services as a mechanic or artisan should be
any more entitled to protection than a clerk who may
not receive any more than $50 a month for his ser-
vices. Consequently I think the words are used as syn-
onymous in the present statute. If it is a constitution-
al right, which every citizen has, to assign any amount
due him, the man who has a small amount due him has
the same right which pertains to one having a larger
amount due him. On the grounds of public policy, the
general principles of the law declare that an assign-
ment of compensation not earned by a public officer is
invalid, for the reason that his energies in the discharge
of his duties may be crippled by the fact that his com-
pensation has been assigned to another.

[Stinson v. Faircloth-Byrd Company.]

For a similar reason, in the protection of all persons who have contracted for the services of another, I think the Legislature may prohibit the assignment of all unearned wages and salaries. The fact that some receive much larger compensation than others does not change the principle, but only suggests to the Legislature the policy of fixing a limit as to the amount which may or may not be assigned.

I think the act in question is valid as to unearned wages or salaries.