### J. H. THOMAS v. L. E. SANDERLIN.

(Filed 11 April, 1917.)

1. **Mortgages—Household Furniture—Husband and Wife—Statutes—Constitutional Law.**

   Revisal, sec. 1041, providing that a mortgage on the household and kitchen furniture shall be void unless the wife join therein and her privy examination taken in the manner prescribed by law as on conveyances of real estate, is in the exercise of the police power of a State and promotive of its economic welfare and public convenience and comfort, and designed for the protection of the home, and is a constitutional and valid enactment.

2. **Mortgages—Husband and Wife—Household Furniture—Pianos—Statutes.**

   A piano owned by the husband and placed in his home for the use of his wife and daughters, and so used by them, is included under the statu-

tory terms, "Household and kitchen furniture," as used in Revisal, sec. 1041, and a chattel mortgage thereof by the husband is invalid unless the wife signs as directed by the statute.

CLARK, C. J., concurring.

CIVIL ACTION to recover a piano on which plaintiff held a chattel mortgage, executed by the defendant to secure a debt of $153, due September, 1914, heard on appeal from recorder's court before *Bond, J.,* at February Term, 1917, of NEW HANOVER.

On the hearing the relevant facts agreed upon by the parties were as follows:

1. L. E. Sandlin, defendant, is a married man residing with his wife and daughters.

2. He purchased a piano and had the same placed in his house to be used by his wife and daughters, and it was used by them.

3. That L. E. Sandlin mortgaged the piano subsequent to the passage of section 1041 of the Revisal of 1905.

5. That the mortgage was not signed by the wife of the defendant, nor was her privy examination taken as required under section 1041 of the Revisal of 1905.

6. That the defendant was indebted to the plaintiff in the sum of $153, which was secured by said mortgage, less a credit of $21.08, leaving a balance due of $131.92, with interest from 5 June, 1914.

Upon these facts, the court, reversing the action of the recorder, entered judgment for plaintiff, the pertinent portions of said judgment, after reciting that the piano was purchased by defendant subsequent to passage of section 1041, being as follows:

"Upon the foregoing facts, the court being of the opinion that a piano is an article of household and kitchen furniture under section 1041 of the Revisal of 1905, but that said section is an unwarranted interference with defendants' *jus disponendi,* and that said section is unconstitutional and is void; that the said mortgage is a valid and subsisting lien upon said piano, and it is, therefore, upon motion of counsel for plaintiff, ordered, adjudged, and decreed, that the said mortgage is a valid and subsisting lien on said piano; that the plaintiff recover of the defendant the said piano, which is hereby condemned for sale," etc.

From which judgment defendant duly excepted and appealed.

*L. J. Poisson and J. O. Carr for plaintiff.*
*J. C. King for defendant.*

HOKE, J., after stating case: The statute enacted in 1891 and appearing in Revisal 1905, sec. 1041, provides that "A chattel mortgage

by the husband on the household and kitchen furniture shall be void unless the wife join therein and her privy examination be taken in the manner prescribed by law, as on conveyances of real estate." In the present instance the wife did not join in the conveyance as required, and unless the statute is unconstitutional or the piano does not come within its descriptive terms, a recovery by plaintiff cannot be sustained. While the *jus disponendi* is fully recognized with us as a substantial incident of ownership coming under the constitutional guarantees for the protection of private property, it is also established in this judisdiction that neither this nor any other proprietary right is absolute in its nature, but the same is enjoyed and held subject to legislative regulation in the reasonable exercise of the police power.

It has been properly said that no adequate or satisfactory definition of police power can be given, for as our civilization and social conditions become more advanced and complex the extent and inclusive character of this power is being more and more illustrated, and in the later decisions has been held to embrace not only governmental regulations appertaining to the good order, health, and morals of a community, but also such as are considered promotive of its economic welfare and public convenience and comfort. In reference to the ownership of property, the exercise of this power may be extended to measures affecting its acquisition, use, transfer and devolution, the latter certainly so far as the disposition of property by will is concerned, being, under our decisions, in the absolute control of the Legislature, and as to all other features of ownership the legislative will must prevail unless clearly in contravention of some express constitutional provision, the recognized position being that the statute will in all cases be upheld unless it has no substantial relation to the purpose sought to be attained and is an arbitrary and manifest invasion of personal and private rights. Speaking to the subject in 6 Ruling Case Law, p. 193, the author says: "All poperty within the jurisdiction of a State, however unqualified may be the title of the owner, is held on the implied condition or obligation that it shall not be injurious to the equal right of others to the use and benefit of their own property. In other words, all property is held subject to the general police power of the State so to regulate and control its use in a proper case as to secure the general safety, the public welfare, and the peace, good order, and morals of the community. Accordingly it is a fundamental principle of the constitutional system of the United States that rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in it by the Constitution, may think necessary

and expedient. And to these ends the Legislature under its police power may pass laws regulating the acquisition, enjoyment, and disposition of property, even though in some respects these may operate as a restraint on individual freedom or the use of property. The subordination of property rights to the just exercise of the police power has been said to be as complete as is the subjection of these rights to the proper exercise of the taxing power; and it is held that this implied condition is quite irrespective of the source or character of the title. This principle is in effect an application of the maxim which underlies the police power, *Sic utere tuo ut alienum non lædas.*" And authoriative cases on the subject are in full support of this statement of the principle. *Chicago and Alton R. R. v. Tranbarger,* 238 U. S., 67; *Reinman v. City of Little Rock,* 237 U. S., 171; *Atlantic Coast Line v. Goldsboro,* 232 U. S., pp. 548-558; *Mutual Loan Co. v. Martell,* 222 U. S., pp. 225-236; affirming same case in 200 Mass., 482; *McLean v. Arkansas,* 211 U. S., pp. 539-547; *Holden v. Hardy,* 169 U. S., 366; *Bushnell v. Loomis,* 234 Mo., 371; *Harbeson v. Knoxville Iron Co.,* 103 Tenn., 421; affirmed in 183 U. S., 13. In *Atlantic Coast Line v. Goldsboro, supra, Associate Justice Pitney,* delivering the opinion, said, among other things (p. 558): "For it is settled that neither the contract clause nor the due process clause has the effect of overruling the police power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even by express grant, and that all contract and property rights are held subject to its fair exercise," citing *Slaughterhouse* and other cases. And in *McLean v. Arkansas, Associate Justice Day,* for the Court, said: "The Legislature, being familiar with local conditions, is primarily the judge of the necessity of such enactments. The mere fact that a court may differ with the Legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of this legislation in question, affords no ground for judicial interference unless the act is unmistakably and palpably in excess of legislative power."

Our own decisions are in accord with these cases, chiefly interpretative of the Federal Constitution. *Board of Health v. Louisburg, ante,* p. 250. *Skinner v. Thomas,* 171 N. C., 99: *Glenn v. Express Co.,* 170 N. C., 286; *S. v. R. R.,* 169 N. C., 295. All the more so that in this State, under our Constitution, the General Assembly, so far as that instrument is concerned, is possessed of full legislative powers unless restrained by express constitutional provision or necessary implication therefrom. *S. v. Lewis,* 142 N. C., 626; Black on Constitutional Law (3d Ed.), 357.

In *Lewis's case, supra,* it was held: "The Legislature of North Carolina has full legislative power which the people of this State can exercise as fully as the Parliament of England or any other legislative body of a free people save only as there are restrictions imposed by the State and Federal constitutions. Among the authorities heretofore cited, the case coming nearer, probably, to the one before us is *Mutual Loan v. Martell, supra,* in which an act of the Legislature of Massachusetts provided that no order for assignment of wages to be earned in amount less than $200 should be valid unless accepted in writing by the employer, and in case of a married man no such order should be valid unless the written consent of his wife was attached thereto."

The statute was upheld by the Supreme Court of Massachusetts and the decision was sustained by the Supreme Court of the United States, 222 U. S., 225, both tribunals making distinct reference to the requirement as to the wife's signature. In the opinion of the United States Supreme Court by *Associate Justice McKenna,* it was held, among other things: "The validity of police regulations depends upon the circumstances of each case, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. *Chicago, Burlington and Quincy Ry. Co. v. Drainage Commissioners,* 200 U. S., 591.

The power of the State extends to so dealing with conditions existing in the State as to bring out of them the greatest welfare of its people. *Bacon v. Walker,* 204 U. S., 311.

"Police power is but another name for the power of government; it is subject only to constitutional limitations which allow a comprehensive range of judgment, and it is the province of the State to adopt by its Legislature such policy as it deems best.

"Legislation cannot be judged by theoretical standards, but must be tested by the concrete conditions inducing it.

"A State may, as a police regulation, make assignments of future wages invalid except under conditions that will properly restrict extravagance and improvidence of wage-earners.

"A State may, under conditions justifying it, prescribe that an assignment by a married man of wages to be earned by him in future shall be invalid unless consented to by his wife.

"This Court recognizes the propriety of deferring to tribunals on the spot, and will not oppose its notions of necessity to legislation adopted to accomplish a legitimate purpose. *Laurel Hill Cemetery v. San Francisco,* 216 U. S., 358.

"A State has power to prescribe the form and manner of execution and authentication of legal instruments in regard to property, its devolution and transfer. *Arnett v. Reade,* 220 U. S., 311.

"There are many legal restrictions that may be placed by a State on the liberty of contract, and this Court will not interfere except in a clear case of abuse of power. *Chicago, Burlington and Quincy R. R. v. McGuire,* 219 U. S., 549."

The influences that proceed from a well ordered home are among the chiefest bulwarks of our social order, and if these various statutes restrictive of the right of contract and of the ordinary use and enjoyment of property can be upheld as a valid exercise of the police power, assuredly a statute of this kind, designed and calculated to maintain the peace and comfort of the home and to protect the wife and children therein from the ill-considered action of an improvident husband, may be sustained and referred to the same beneficent principle, our own decisions requiring the joinder of the wife to a valid conveyance of an allotted homestead, *Joyner v. Sugg,* 132 N. C., 580, and that her privy examination must be taken in order to a valid conveyance of her own realty. *Sutherland v. Hunter,* 93 N. C., 310, and *Ferguson v. Kinsland,* 93 N. C., 337, are in general affirmance of the position. The State decisions to which we were referred by counsel, *Hughes v. Hodges,* 102 N. C., 236, and *Bruce v. Strickland,* 81 N. C., 267, and others of like kind, are to the effect merely that statutes in general restraint of the right of alienation will not, as a rule, be upheld and have no necessary application to a case of this kind where the limitation on the rights of ownership is restrictive in its nature and designed and well calculated to promote a laudable purpose, one peculiarly within the influence and protection of the police power of the State.

In regard to the property conveyed, a piano coming within the descriptive terms of the statute, "household and kitchen furniture," the facts show that it had been placed in the home to be used by defendant's wife and daughters and was so used by them, and, on these facts, there is nothing which tends to show that the statute does not embrace it. The statutory terms should be held to include property dedicated to the convenience and comfort of the home which is adequate and adapted to the purpose, having due regard to the owner's means and station in life, and, so defined, it is usually held to extend to a piano. *Von Storch v. Winslow,* 13 R. I., 23; *Alsup v. Jordan,* 69 Tex., 300; *McCoy v. Thompson,* 138 S. W., 1062.

On the facts agreed upon, we are of opinion that the statute in question is valid; that the piano is well within its terms and meaning, and the attempted conveyance by plaintiff without the joinder of the wife is void, as the statute declares.

This will be certified, that the judgment awarding recovery be set aside and the action dismissed.

Reversed.

CLARK, C. J., Concurring: It is well settled by our own decisions, and everywhere else, that the Legislature of a State possesses the law-making power as absolutely as the people themselves can exercise it if they could assemble in one place, except where that power is restricted by some provision of the State or Federal Constitution. There is no provision in either that has disabled the Legislature of North Carolina from enacting Revisal, 1041.

Prior to the Constitution of 1868 a married woman by the fact of marriage itself lost not only the *jus disponendi* but the entire ownership of her personal property, and of her real estate during the life of her husband, and the power to dispose of it by will or any conveyance. The Convention of 1868 modernized our Constitution by putting husband and wife on an equality in this respect, save only the restriction that in the conveyance of her realty the wife must have the written consent of her husband.

Since the Constitution of 1868 the husband cannot convey his "allotted" homestead without the joinder and privy examination of his wife. Const., Art. X, sec. 8; *Dalrymple v. Cole,* 170 N. C., 102. It would be strange, therefore, if the Legislature could not forbid him to convey his household and kitchen furniture without the same joinder and privy examination of the wife, for there is no prohibition against such enactment by the General Assembly. The house would be of small use to her without furniture and kitchen utensils.

The same public policy which requires the joinder of the wife in a mortgage by the husband of his household and kitchen furniture, Revisal, 1041, is also shown in the legislation which requires the joinder of the wife to relieve the husband's realty from the dower right of the wife, Revisal, 3085. Dower exists only by virtue of the statute of 1868-9, Revisal, 3084, and if the Legislature can require the joinder of the wife in the conveyance of the husband's realty in order to make a full and perfect conveyance of it, it has authority to impose the same requirement upon a conveyance by the husband of his household and kitchen furniture.

From 1784 up to the act of 1868-9 such dower right did not exist as to lands conveyed by the husband, for the wife was entitled to dower only in the real estate of which the husband "died siezed and possessed." This was not changed by the Constitution of 1868, but by the act of 1868-9, which required the joinder of the wife in the husband's conveyance of "all lands, tenements, and hereditaments whereof the husband was seized and possessed at any time during the coverture." Revisal, 3084, 3085. The General Assembly showed its absolute power over the whole subject by dispensing with the joinder of the wife in certain

cases, Revisal, 959. It is simply a matter of public policy which is vested in the sovereignty of the people to be exercised by their representatives in the General Assembly, subject to review, not by the courts, but only by the people themselves in the election of new representatives.

The courts have no control over the public policy of the State, its social legislation or exercise of the police power. If the courts had any control over such matters, and their views and not those enunciated by the lawmaking powers should govern then, as has been well said, "the selection of the judges must be frankly based upon the political and social outlook of candidates for judicial position, and the ultimate sovereignty over the public policy of the State and Union would lay with the judges and not with the people."

The requirement that the wife must join in the conveyance of the husband's realty, in the conveyance of his allotted homestead, and in a mortgage of his household and kitchen furniture, and that the husband must give his written assent to the conveyance by the wife of her realty, are all of a piece as a declaration of public policy. Two of these are statutory and can be changed, repealed, or added to at the will of the Legislature.

The requirement of the privy examination of the wife has come down to us from a distant and barbarous past, and was based upon the conception of the inherent inferiority and incompetence of the woman, the presumption that the husband would bully her and that she could be bullied by him. Originally such examination was in court, but became useless when made by a magistrate selected by the husband. It must be admitted that there was some ground for this examination as long as we continued to hold that a husband had the right to whip his wife "if he did not use a switch larger than his thumb." But this doctrine was repudiated here in 1874, in *S. v. Oliver,* 70 N. C., 61, and probably before that everywhere else, and hence the privy examination has long since been abolished in England, in all our adjoining States—Virginia, South Carolina, Georgia, Tennessee, and West Virginia—and, indeed in all the States of the Union except North Carolina and four others. However antiquated and unnecessary the privy examination has now become, it cannot be questioned that the General Assembly can require it as to all conveyances made by the husband in which the wife is required to join. It is otherwise as to conveyances by the wife of her realty, as to which the Constitution has guaranteed that the property of the wife shall remain hers as fully as if she were unmarried, and that she may convey it, requiring only "the written assent of the husband." The addition of the privy examination, therefore, in conveyances by her is contrary to this stipulation in the Constitution.

Revisal, 1041, applies only to conveyances by the husband of the household and kitchen furniture, and the requirement of the privy examination of the wife in giving her assent thereto is within the power of the General Assembly and is in line with the same requirement in the Constitution as to the joinder of the wife in the conveyance of the allotted homestead—the only instance in which the Constitution recognizes such requirement.