PERRY J. MASSIE, Appellee, *vs.* CHARLES E. CESSNA, Appellant.

*Opinion filed April 23, 1909.*

1. CONSTITUTIONAL LAW—*right to labor and to dispose of compensation received are property rights.* The right to labor for and render services to another and the right to dispose of the compensation received for so doing are property rights, within the meaning of section 2 of article 2 of the constitution, providing that "no person shall be deprived of life, liberty or property without due process of law."

2. SAME—*what laws may be enacted by legislature in the exercise of police power.* The laws which the legislature may enact in the exercise of the police power of the State are those which have a tendency to promote the public comfort, health, safety, morals or welfare or which tend to prevent some recognized evil or wrong.

3. SAME—*act of 1905, relating to assignment of wages and salary, is invalid.* The act of 1905, relating to the assignment of wages, income or salary, is unconstitutional, in that it includes with wage earners, who, as a class, might lawfully be made the subject of a protective act of such character, all persons employed at a salary, without reference to the amount of the salary received.

4. SAME—*provision of the Assignment of Wages act relating to usury is void.* The provision of section 3 of the Assignment of Wages act of 1905, which declares void an assignment of wages or salary given as security for a loan tainted with usury, is unconstitutional, in that the law of the State makes no such provision with reference to other instruments or conveyances given to secure usurious debts.

5. WORDS AND PHRASES—*the word "wages" has a less extensive meaning than "salary."* The word "wages" is usually restricted to sums paid as hire or reward to domestic or menial servants and to sums paid to artisans, mechanics, laborers and others employed in manual occupations, while "salary" has reference to the compensation of clerks, book-keepers and other employees of like class, and to that of officers of corporations and public officers.

VICKERS and DUNN, JJ., specially concurring.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

CLARK & CLARK, for appellant:

"No person shall be deprived of life, liberty, or property, without due process of law." Const. of Ill. art. 2, sec. 2.

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Const. of U. S. art. 14.

The General Assembly shall not pass special laws regulating the rate of interest on money. Const. of Ill. art. 4, sec. 22.

The General Assembly shall not pass any special law granting to any individual any special or exclusive privilege or immunity. Const. of Ill. art. 4, sec. 22.

The privilege of contracting is both a liberty and a property right. Liberty includes the right to make and enforce contracts. *Matthews* v. *People,* 202 Ill. 389.

Courts are authorized to interfere and declare a statute unconstitutional or not the law of the land if it conflicts with the constitutional right of the individual and does not relate to the promotion of the comfort, safety and welfare of society. *Booth* v. *People,* 186 Ill. 43.

What are the subjects of police powers and what are reasonable regulations are judicial questions, and the courts may declare enactments which, under the guise of police power, go beyond the great principle of securing the safety or welfare of the public to be invalid. *Booth* v. *People,* 186 Ill. 43.

The privilege of contracting is both a liberty and a property right, and if A is denied the right to contract and acquire property in a manner which he has hitherto enjoyed under the law and which B, C and D are still allowed by law to enjoy, it is clear that he is deprived of both liberty

239—23

and property to the extent that he is thus denied the right to contract. *Frorer* v. *People,* 141 Ill. 171.

A person has the same right to assign his wages that he has to mortgage his homestead or to mortgage his personal property that is exempt from execution. *Mallin* v. *Wenham,* 209 Ill. 252.

It is not in the power of the legislature to provide that one who is possessed of property may not sell it to another and agree with the purchaser to work for him in payment for it. The laborer has a right to contract with respect to his labor and to make such terms and agreements as may be mutually agreeable to him and his employer. *Coal Co.* v. *Harrier,* 207 Ill. 624.

The legislature cannot prevent persons who are *sui juris* from laboring or from making such contracts as they see fit relative to their own lawful labor. *Gillespie* v. *People,* 188 Ill. 176.

It has never been the policy of the law to abridge the rights of parties to contract with each other in such manner as may suit their convenience, where the contract is not against the public interests or the rights of third persons. *Hogan* v. *Akin,* 181 Ill. 448.

The police power must be limited to such measures as are designed to promote the public health, the public morals, the public safety or the public welfare. When it can be seen from the provisions of a statute that it has no tendency to promote the public health, safety, morals, comfort or welfare the courts are authorized to declare it invalid. *Noel* v. *People,* 187 Ill. 587.

Elmer E. Ledbetter, and M. B. Wellington, (Edgar A. Bancroft, and Victor A. Remy, of counsel,) for appellee:

The act of 1905, relative to assignments of wages, is valid. *Crawford* v. *Topeka,* 51 Kan. 756; *Fire Dept.* v. *Gilmour,* 149 N. Y. 453; *Ingram* v. *Colgan,* 106 Cal. 113;

*Hunt* v. *Armbruster,* 17 N. J. Eq. 208; *Munn* v. *People,* 69 Ill. 81; *Hawthorn* v. *People,* 109 id. 302.

The act is not a violation of the Bill of Rights. *Munn* v. *People,* 69 Ill. 81; *I. N. T. B. Co.* v. *Weissinger,* 160 Ind. 349.

The act in question is designed to promote the welfare of society. Act of 1877, entitled "Exemptions;" act of 1899, providing attorneys' fees in wage claims; act of 1891, entitled "Employment."

The General Assembly has always regulated wages and wage earners. See statutes above mentioned and act entitled "Garnishment."

The act is a proper exercise of the police power. *Crawford* v. *Topeka,* 51 Kan. 756; *I. N. T. B. Co.* v. *Weissinger,* 160 Ind. 349; *Munn* v. *People,* 69 Ill. 81; *Hawthorn* v. *People,* 109 id. 302; *Frorer* v. *People,* 141 id. 131; *Noel* v. *People,* 187 id. 581; *Ruhstrat* v. *People,* 185 id. 133.

The act is not special legislation. *Hawthorn* v. *People,* 109 Ill. 302.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This appeal comes directly from the circuit court of Cook county, and presents the question of the constitutionality of the statute of May 13, 1905, entitled "An act in relation to the assignment of wages, income or salary," (Hurd's Stat. 1908, p. 176,) which reads as follows:

"Sec. 1. No assignment of the wages or salary of any person shall be valid, so as to vest in the assignee any beneficial interest, either at law or in equity, unless such assignment shall be in writing, signed by the assignor and acknowledged in person by the assignor before a justice of the peace in and for the township in which the assignor resides, and entered by such justice upon his docket, and unless within three days from the date of the execution and acknowledgment of such assignment, a true and complete

copy of said assignment and of the certificate of its acknowledgment shall be served upon the person, firm or corporation from whom such wages or salary is due or is to become due, in the same manner that the summons in chancery is now required by law to be served: *Provided further,* that no assignment of wages or salary by a married person shall be valid unless the same is also executed and acknowledged, as above, by the assignor's wife or husband, as the case may be.

"Sec. 2. The term 'assignment,' as used in this act, shall include every assignment, transfer, sale, pledge, mortgage or hypothecation, however made or attempted, of the wages or salary of any person, or of any interest therein.

"Sec. 3. Whenever any assignment of the wages or salary of any person or persons shall be given as security for a loan tainted with usury, or shall be given to secure the payment or fulfillment of a usurious contract, or the payment of the principal or the interest of a usurious debt, such assignment shall be absolutely void.

"Sec. 4. Every assignment of wages to be earned in whole or in part more than six (6) months from and after the making of such assignment shall be absolutely void.

"Sec. 5. Whenever any person, firm or corporation shall bring or threaten to bring any action or suit to enforce any assignment of wages or salary which has not been duly executed, acknowledged and served upon the employer in conformity with the provisions of this act or which is declared invalid by the provisions of this act, courts of equity shall have full power, upon the application either of the assignor of such wages or salary, or of the person, firm or corporation from whom such wages or salary is, or is to become due, to perpetually enjoin the threatened or attempted enforcement of any such assignment, and the fact that the complainant has a complete and adequate remedy at law, shall constitute no defense to the maintenance of a suit in equity for the purposes aforesaid.

"Sec. 6. The invalidity of any portion of this act shall not affect the validity of any other portion thereof which can be given effect without such invalid part."

The appellee filed his bill for an injunction against the appellant, alleging that he had been for a number of years continuously in the employ of the Inter-Ocean Newspaper Company; that about twelve years ago he commenced a course of dealing with the appellant, who loaned money to wage earners and salaried people at exorbitant, illegal and usurious rates of interest, which dealings had continued until the present time and all of which had been usurious; that he had upon a number of occasions borrowed from appellant certain sums of money at ten per cent interest per month, and had re-paid to appellant, by way of interest and other moneys, many large sums for which he had received no credit upon the principal, which sums greatly exceeded the amount of money borrowed, together with legal interest thereon; that there were executed by appellee, at various times, assignments of his wages as security for the payment of the several usurious loans, all of which assignments appellant now holds and has threatened to file with appellee's employer, thereby intending to compel appellee to comply with appellant's unlawful and usurious demands.

The bill further alleges that in February, 1907, as a transaction wholly separate and apart from the previous dealings with appellant, the appellee borrowed $25, for the use of which he agreed to pay $2.50 per month as interest until said sum was re-paid, and he executed to appellant an assignment of wages to be earned until August 18, 1908, as security for the payment of said sum and interest; that this assignment was given as security for a loan tainted with usury, and was never acknowledged in person, nor before a justice of the peace, nor before any person or official whatsoever, so that, by reason of the statute in such case provided, it is not valid; that appellant has filed with the Inter-Ocean Newspaper Company a copy of this assign-

ment and now threatens to bring suit to enforce the same, which would result in great and irreparable injury to the complainant, and the appellant, Cessna, will bring said suit unless restrained from so doing.

The prayer of the bill was, that all of said assignments of wages now in the hands of the appellant or his agents be canceled and appellant enjoined from proceeding in any manner to enforce any of said assignments. A demurrer to the bill having been overruled, the defendant elected to stand by his demurrer, and a decree was entered in accordance with the prayer of the bill.

The appellant insists that the statute in question violates section 2 of article 2 of the constitution of the State, which provides that "no person shall be deprived of life, liberty or property without due process of law." This is the only question for consideration, as the averments of the bill with reference to transactions prior to that of February, 1907, are too indefinite to show the existence of any equity in favor of appellee.

The right to labor for and to render services to another, and the right to dispose of the compensation to be received for so doing, are property rights within the meaning of the language just quoted from the constitution. (*Frorer* v. *People,* 141 Ill. 171; *Braceville Coal Co.* v. *People,* 147 id. 66; *Mallin* v. *Wenham,* 209 id. 252.) It is at once apparent upon an examination of this statute that it abridges the right of the man who earns a salary and the right of the man who earns wages to contract with reference thereto. Notwithstanding this fact, appellee contends that the act in question is not prohibited by the constitution, for the reason that it is referable to the police power of the State. The laws which the legislature may enact in the exercise of that power are laws which have a tendency to promote the public comfort, health, safety, morals or welfare or which have a tendency to prevent some recognized evil or wrong. *Ritchie* v. *People,* 155 Ill. 98; *City of Chicago* v. *Netcher,*

183 id. 104; *Noel* v. *People,* 187 id. 587; *People* v. *Steele,* 231 id. 340.

It is urged that wage earners compose a class of inhabitants of the State who, when they desire to borrow money and secure the same by the assignment of their wages earned or to be earned, become victims of men engaged in the business of loaning money at usurious rates, who are commonly denominated "loan sharks;" that when the wage earner finds it necessary to borrow money upon such security he is unable to deal with the money lender upon an even footing; that the latter is able to exact usury, and to practice various like wrongs and impositions upon him, by reason of his poverty and sometimes by reason of his improvidence, and that this creates a condition of affairs which the legislature may remedy by the exercise of the police power. While we think this evil exists, it is yet apparent, upon a careful examination of this statute, that it is too broad in its terms to be justified as an exercise of the police power for the purpose of mitigating or remedying the wrong at which it is aimed. It applies not only to wages but also to salaries. "Wages," in its ordinary acceptation, has a less extensive meaning than "salary." "Wages" is usually restricted to sums paid as hire or reward to domestic or menial servants and to sums paid to artisans, mechanics, laborers and others employed in various manual occupations, while "salary" has reference to the compensation of clerks, bookkeepers, other employees of like class, officers of corporations and public officers. (2 Standard Dic. p. 1573; *In re Striker,* 158 N. Y. 526.) In this State salaries in excess of $5000 per annum are not unusual. It cannot be said that an officer of a corporation who is in the enjoyment of a salary of $20,000 per annum is or may be the victim of the evil at which this statute is aimed, and yet his salary is plainly within the terms of the act. Counsel for appellee intimate that a bank president or the head of a great commercial enterprise requires the same protection in this re-

spect as a wage earner. We have not been able to regard
this suggestion as seriously made. A bank president who
desires to borrow money does not need protection from a
"loan shark" unless he be mentally deficient or morally de-
linquent. A very limited exercise of the power of observa-
tion is sufficient to demonstrate that as a borrower he is not
in the same class as the laborer who works for two dollars
per day.

This statute, in so far as it would tend to make effective
the right of the wage earner to receive the full benefit of
the wages earned by him, is like unto the statute which pre-
fers laborers' and servants' claims in certain instances; like
unto the statute which provides that no personal property
shall be exempt from execution issued for the collection of
the wages of any laborer or servant, and like unto the stat-
ute which provides that in a suit brought by "a mechanic,
artisan, miner, laborer, or servant or employee" for his or
her "wages" earned and due, the plaintiff may, under cer-
tain conditions, recover, in addition to the wages, an at-
torney's fee for the prosecution of the suit. It is to be
observed that these statutes all pertain to wages, and not
salaries.

The statute last above referred to is the act of June.1,
1889. (Hurd's Stat. 1908, p. 192.) Its validity has been
assailed upon the ground that it is special legislation, con-
ferring a right upon persons therein specified to attorneys
fees that was.not given to other persons; but this court held
that the enumeration, which is broad enough to include all
wage earners and which includes none but wage earners, is
an enumeration of persons composing a class, upon which
the right given by the statute might be conferred without
violation of the constitution. (*Vogel* v. *Pekoc,* 157 Ill.
339.) We have recently referred to that case with approval.
(*Manowsky* v. *Stephan,* 233 Ill. 409.) The reasoning of
the *Vogel case* would seem to lead to the conclusion that
wage earners are the proper objects of legislation which

would tend to protect them from the evil which this statute is designed to obviate. Such an act would not be rendered invalid by the fact that it placed reasonable regulations upon the right to assign wages to secure an indebtedness and prescribed a reasonable method to be pursued in making the assignment effective. It has been recently so held by the Supreme Court of Massachusetts in reference to the sections of a statute regulating the assignment of "wages." (*Mutual Loan Co.* v. *Martell,* 200 Mass. 482.) It is true that many persons who are salaried receive compensation not greater in amount, by the month or year, than the compensation received by many wage earners. Whether a statute protecting a salary not greater in amount than a certain sum per week or month, or protecting a portion of a salary which portion is not greater than a certain sum per month or week, would be valid, is a question not here presented.

The statute now under consideration is invalid because it violates the provision of our constitution which has been invoked by limiting the right of persons earning the higher salaries to assign or transfer their salaries in such manner as they see fit, there being nothing in the public policy of the State requiring or warranting such abridgment of their right, and nothing requiring or warranting a statute giving to such persons the benefit that might with entire propriety be given to wage earners by an act in reference to the assignment of wages.

The third section of this statute is unconstitutional for the further reason that it makes the assignment given as security for a loan tainted with usury void, while the law of the State makes no such provision with reference to other instruments or other conveyances given to secure usurious debts. We also point out the fact that it is extremely doubtful whether the act in its entirety could in any event be made effective in the city of Chicago, for the reason that it requires the assignment to be acknowledged before a justice of the peace in and for the township in

which the assignor resides and entered by such justice upon his docket, there being now no justices of the peace in that city and no law requiring the keeping of such a docket as that which the justice of the peace formerly kept.

The decree of the circuit court of Cook county will be reversed and the cause will be remanded, with directions to sustain the demurrer to the bill.

*Reversed and remanded, with directions.*

VICKERS and DUNN, JJ., specially concurring: We concur in holding the statute unconstitutional but not in the implication that it would be constitutional if restricted to wage earners, if the opinion contains such implication.