# THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY ET AL. *v*. MARSHALL.

[No. 22,381. Filed June 9, 1914. Rehearing denied October 13, 1914.]

1. ASSIGNMENTS.—*Wages.—Consent of Assignor's Wife.*—Section 4 of the act of 1909 (Acts 1909 p. 76, §7999 Burns 1914), providing that no assignment of wages or salary by a married man, who is the head of a family residing in the State, shall be valid or enforceable without the written consent of the wife duly acknowledged, is not restricted in its application to assignments made to wage brokers, but clearly manifests an intent to prohibit such assignments to any person, regardless of occupation. p. 283.

2. STATUTES.—*Construction.*—While statutes in derogation of common-law rights are subject to the rule of strict construction, there is no room for construction where the language of the statute under consideration is plain and the legislative intent free from doubt. p. 284.

3. ASSIGNMENTS.—*Constitutional Law.—Due Process of Law.— Police Power.—Assignment of Wages.*—Section 4 of the act of 1909 (Acts 1909 p. 76, §7999 Burns 1914), prohibiting the assignment of wages by a married man without the written consent of his wife, was inspired by the policy of the State, as evidenced by Art. 1, §22 of the Constitution and subsequent statutory enactments pursuant thereto, to protect the earnings of married men so that they would be able to discharge their duties to support their families, and is therefore a valid exercise of the police power, and not open to the objection that it operates to deprive a person of his property without due process of law. p. 284.

4. COMMERCE.—*Regulation.—Wages of Employes.*—Section 4 of the act of 1909 (Acts 1909 p. 76, §7999 Burns 1914), prohibiting the assignment of wages by a married man without the written consent of his wife, is not invalid as an interference with the regulation of interstate commerce when applied to an assignment by an employe engaged in such commerce. p. 288.

From Superior Court of Marion County (88,657) ; *Charles J. Orbison,* Judge.

Action by Hugh Burton Marshall against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company and others. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Frank L. Littleton, Charles P. Stewart* and *Bailey & Young,* for appellants.

*Henry W. Bullock* and *Louis Herbst,* for appellee.

MORRIS, J.—The evidence in this cause shows that on September 16, 1912, appellee was employed by appellant railway company as a locomotive fireman. The contract of employment was oral, with no fixed period of continuance. Appellee was discharged on October 16, 1912, and, in the meantime, had worked during nearly all of the intervening period, as fireman on a switching engine in the railway company's yards at Indianapolis. During the remainder of the

time he acted as fireman on locomotives employed in interstate commerce. On October 8, 1912, appellee purchased a watch of appellants Charles W. and Stella C. Scanlin, partners conducting a retail jewelry business in Indianapolis, under the name of Capitol City Jewelry Store, and, at the time executed the following written instrument:

"City Indianapolis, Date Oct. 8, 1912. Mr. M. A. Beville, Superintendent of Master Mechanics. For value received, I have this day signed watch order for $38.00, in favor of Capitol City Jewelry Store, or order, for deduction from wages due and to become due me as follows:

| | | | | |
|---|---|---|---|---|
| From | Month | of Oct. | wages, | $8.00 |
| " | " | " Nov. | wages, | 8.00 |
| " | " | " Dec. | wages, | 8.00 |
| " | " | " Jan. | wages, | 7.00 |
| " | " | " Feb. | wages | 7.00 |

In case I leave your employ voluntarily, lay off, am discharged, or any doubt arises about my being retained in service, I authorize you to deduct the sum of all unpaid installments from any balance of money due me. (Signed) Hugh Burton Marshall."

A duplicate of the above was delivered to appellant railway company on October 10, 1912. When appellee was discharged, he went to the jewelry store, and offered to return the watch, and pay $8 in full settlement of the contract. The offer was refused. When discharged he had earned, in October, the sum of $42.75. Of this sum $22.70 was earned previous to October 9. He made a demand on appellant railway company for the $42.75, which the latter refused, because of the watch order. The company thereupon tendered appellee $4.75, in full payment of its liability to him. The tender was refused.

Appellee was a married man, living with his wife. The latter never consented, in writing, to the attempted assignment of appellee's wages. When appellee was employed he was given a book of rules, which contained the following: "Watches that have been examined and certified to by a

designated inspector must be used by conductors, engine-men, yard-conductors, yard-enginemen and other employes required by special instructions.'' It does not appear that appellee received any special instructions, from the company, relating to a watch, or that the matter of carrying a watch, was mentioned in any conversation between appellee and any officer of the railway company. Whether appellee had a watch previous to October 8, 1912, is not disclosed by the evidence. Appellants Scanlin and Scanlin were designated by the railway company as inspectors of watches carried by its employes. They were in no wise engaged in loaning money, directly or indirectly, to employes, or wage earners, but, in connection with their retail jewelry business, they frequently sold, inspected and certified watches to appellant railway company's employes, under wage assignment contracts similar to this one. Appellee, in this action, sued the railway company for the $42.75 wages, and the Scanlins for a cancellation of the wage assignment contract. There was a finding and judgment for appellee against appellants. Separate motions for a new trial, challenging the sufficiency of the evidence, were overruled, and each appellant separately assigns errors here. The same questions are presented by the rulings on demurrers to pleadings, and the alleged insufficiency of the evidence to support the court's findings, and consequently they are considered together.

Appellee, in commencing this action relied on §4, of an act relating to the assignment of wages, approved February 27, 1909 (Acts 1909 p. 76, §7999 Burns 1914), and

1. reading as follows: ''Sec. 4. No assignment of his wages or salary by a married man, who shall be the head of a family residing in this State, shall be valid or enforceable without the consent of his wife, evidenced by her signature to said assignment executed and acknowledged before a notary public or other officer empowered to take acknowledgments of conveyances, and no wage broker or person connected with him directly or indirectly shall be

authorized to take any such acknowledgments.'' Appellants contend that the provisions of said act of 1909 apply only to wage brokers—a class to which appellant partnership does not belong. While the provisions of §§2 and 3 of the act (Acts 1909 p. 76, §§7997, 7998 Burns 1914), are so limited, we are of the opinion that §4, *supra,* clearly manifests an intent to prohibit assignments of wages, whether earned or to be earned, by a married man who is a resident householder of this State, to any person, regardless of 2. occupation. While statutes of this character are subject to the rule of strict construction, because in derogation of common-law rights, such rule can have no application, where, as here, the legislative intent is free from doubt. Where the language of a statutory provision is plain, there is no room for construction. *Cheney* v. *State, ex rel.* (1905), 165 Ind. 121, 125, 74 N. E. 892, and authorities cited.

Appellants urge the invalidity of §4, *supra,* of the act because in conflict with §1, Art. 1, of our State Constitution and the provisions of the 14th amendment of the 3. Federal Constitution which deny to the states the power to deprive a person of property without due process of law. They cite *Republic Iron, etc., Co.* v. *State* (1903), 160 Ind. 379, 66 N. E. 1005, 62 L. R. A. 136, and *Massie* v. *Cessna* (1909), 239 Ill. 352, 88 N. E. 152, 130 Am. St. 234, 28 L. R. A. (N. S.) 1108, in support of such proposition. In the last case above cited, the supreme court of Illinois held invalid a statute that purported to prohibit, except under certain conditions, the assignment of ''wages or *salary*''. The ruling was grounded on the theory that the police power of the state did not extend to the restriction of the freedom of contract in relation to all salaries; that the statute applied as well to persons earning salaries of $20,000 per annum as to those earning wages in small amounts, and that as to the former class it was merely arbitrary and without any reasonable basis. It is fairly infer-

able from the opinion that if the statute had applied only to wages it would have been upheld by a majority of the court. It is evident that in enacting §4, *supra,* of the act of 1909, our legislature was controlled by the same purpose which led the framers of our Constitution to command, by §22 of our bill of rights (Art. 1, §22, Constitution), that liberal exemption laws be enacted, and which inspired the subsequent enactment of our many statutes designed for the protection of the wives and children of resident householders. The Illinois statute, in its scope and purpose, differs so greatly from our act of 1909, as to make the reasoning in the opinion in *Massie* v. *Cessna, supra,* inapplicable to the question here presented. In *Republic Iron, etc., Co.* v. *State, supra,* 389, the action was in the name of the State to recover wages and a penalty under the provisions of §§1 and 2 of the act of February 28, 1899 (Acts 1899 p. 193, §7984 Burns 1914). It was held by this court that the statutory provisions which attempted to take from ''both the employer and employe, whether in the shop, in the store, or on the farm, all power to contract for labor, except upon terms of weekly payment of wages in cash, is an unreasonable, and therefore an unconstitutional restriction.'' The legislation was held an unwarranted exercise of the State's police power, and in conflict with §1, Art. 1, of the State Constitution, and with the 14th amendment to the Federal Constitution. The opinion was not based on the theory that the legislature was powerless to regulate the payment of wages. On the contrary it is expressly stated that such power exists within reasonable bounds. The difference between the provisions of the act of 1899 held invalid, and those under consideration here are such that we are of the opinion that the decision in *Republic Iron, etc., Co.* v. *State, supra,* can throw little, if any, light on the question here considered. The opinion in *Republic Iron, etc., Co.* v. *State, supra,* was handed down at the November term, 1902, of this court. At the same term the case of *International Text-Book Co.* v. *Weissinger* (1903),

160 Ind. 349, 65 N. E. 521, 65 L. R. A. 599, 98 Am. St. 334, was decided, holding valid §4 of the act of February 28, 1899 (Acts 1899 p. 193, §7987 Burns 1914), which prohibited the assignment of future wages to become due to employes. It was held that while the act applied to the future earnings of those who are not householders, as well as to those who are such, that its enactment involved nothing more than the exercise of the authorized police power of the State. It was further held that the act was similar, in its nature, to those humane rules of the law which invalidate agreements, before judgment, to waive the benefit of exemption laws. In 1908, the legislature of Massachusetts enacted a law, §8 of which provides that certain assignments of wages to be earned in the future shall be void when made by a married man without his wife's consent. The constitutionality of the provision was assailed in *Mutual Loan Co.* v. *Martell* (1909), 200 Mass. 482, 86 N. E. 916, 128 Am. St. 446, 43 L. R. A. (N. S.) 746. The act was held valid. On appeal to the Supreme Court of the United States that court held that the act was not in conflict with the 14th amendment to the Federal Constitution, and affirmed the ruling of the supreme judicial court of Massachusetts. *Mutual Loan Co.* v. *Martell* (1911), 222 U. S. 225, 32 Sup. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913 B 529, 531, note. The opinion was delivered by Mr. Justice McKenna, and contains the following language: "There must, indeed, be a certain freedom of contract, and, as there cannot be a precise, verbal expression of the limitations of it, arguments against any particular limitation may have plausible strength, and yet many legal restrictions have been and must be put upon such freedom in adapting human laws to human conduct and necessities."

Our statute is different from the Massachusetts act in that it covers wages already earned as well as future earnings; and the wages here in controversy were in part earned before the execution of the assignment. We perceive no

reason why the prohibiting statute may not be as well directed against assignments of wages already earned as against future earnings.   Otherwise the beneficient purpose of the lawmaking body might be thwarted by repeated assignments of wages, executed as soon as the wages were earned but before their payment may become due.   The law makes it the duty of a married man to support his wife and infant children, and makes it a felony to desert them under certain conditions (§2635 Burns 1914, Acts 1913 p. 956). When a man marries, his dominion over his property becomes subject to reasonable regulations and restrictions by the State, and this dominion may be further restricted by laws enacted subsequent to the marriage.   *Noel* v. *Ewing* (1857), 9 Ind. 37; *Arnett* v. *Reade* (1911), 220 U. S. 311, 31 Sup. Ct. 425, 55 L. Ed. 477, 36 L. R. A. (N. S.) 1040. The provisions of the civil law relating to husband and wife, are much more liberal to the latter than those of the common law.   During the last century a remarkable contest for supremacy between the two schemes was waged in the various American commonwealths.   The struggle in Indiana commenced long before the adoption of our present Constitution in 1851, and played an important part in the debates of the convention.   The 1852 session of the General Assembly was marked by the many and radical changes in the law respecting the duties and obligations of the husband, and these and subsequent changes have resulted in the elimination of most of the provisions of the common law which cast oppressive burdens on the wife, and, in fact, have developed a scheme more liberal to her, in many respects, than that of the civil law.   Unless the reason of mankind has been at fault and history has failed to record the truth, the family was the earliest of our social institutions, and has formed the basis of human progress toward a more perfect civilization.   The promotion of the welfare of the family has inspired the organization of state governments and guaranteed their perpetuity, and is concededly a proper subject for the exercise

of the police power of the states.   Our State has made liberal
provisions for the education of its youth in the common
schools, and for the relief of the destitute.   Improvident
debts of the head of the family constitute an important
factor not only in the destitution and illiteracy of the State's
youth, but hinders the normal development of their physical,
mental and moral powers.   By restricting the power of the
householder to pledge his future earnings and those which
he has not yet received, the tendency to heedless extrava-
gance is measurably curtailed, and we are of the opinion
that the legislation here in controversy is well within the
limits of the State's police power, and offends no provision
of either State or Federal Constitution.

It is further contended that appellee was engaged in in-
terstate commerce and that the railway company, in dis-
charging its duties as an interstate carrier may prop-
4.   erly require of all its employes the carrying of in-
spected watches; that this legislation tends to hinder
interstate commerce and is consequently invalid.   The most
important feature of the domestic relations law, is that of
husband and wife.   The law of that relation, is exclusively
for the states, no power thereover having been delegated to
Congress by the Federal Constitution.   Cooley, Const. Lim.
(5th ed.) 708.   It is quite true, that under the cover of the
police power the states may not invade the sphere of na-
tional sovereignty and hinder the operation of the laws of
Congress enacted in pursuance of the granted power to regu-
late commerce, between the states, but we perceive in this
legislation no attempt at such covert invasion.   The act in
question is not subject to the suggested infirmity.

Finally it is claimed that the statutory provision is not,
when fairly construed, applicable to the present situation,
and the case of *Van Laninghan* v. *Chicago, etc., R. Co.*
(1914), 145 N. W. (Iowa) 464, is cited.   A statute of Iowa,
declaring invalid an assignment of a married man's wages,
made without the written consent of his wife, was held in

that case not to apply to a railway employe whose employment was conditioned on the carrying of an inspected watch, where the employe, to comply with the condition, assigned his wages to procure the timepiece. It is stated in the opinion that the watch was not returned, and that the right of the employe to earn wages depended on his agreement to procure and carry a watch that would comply with the company's rules of inspection. Whether this court might approve the conclusion reached in that case, were a similar situation presented, is not here determined. It is sufficient to say that in this case it is not shown that appellee's right to earn wages depended on the procurement of a watch, nor is it even shown that he was without a watch capable of meeting the test required by the company, when he made the purchase. There is no error in the record. Judgment affirmed.

NOTE.—Reported in 105 N. E. 570. On the constitutionality of a statute restricting the right to assign salary or wages, see 28 L. R. A. (N. S.) 1108; 43 L. R. A. (N. S.) 746. As to the validity of a statute making an assignment of unearned wages invalid except under prescribed conditions, see Ann. Cas. 1913 B 531. As to what is due process of law, see 24 Am. Dec. 538; 20 Am. St. 554. See, also, under (1) 4 Cyc. 17; (2) 36 Cyc. 1178; (3) 4 Cyc. 17; 8 Cyc. 864; (4) 7 Cyc. 422.