# CIRCUIT COURT OF BALTI-MORE CITY.

Filed January 23, 1924.

EDWARD L. WIGHT AND GEORGE H. ROSENBUSH, TRADING AS BALTIMORE FINANCE CO.,

VS.

THE BALTIMORE & OHIO RAIL-ROAD COMPANY AND W. L. MILLER.

*Allan H. Fisher* and *Jerome Sloman* for complainants.

*Duncan K. Brent* and *David G. McIntosh, Jr.,* for defendants.

BOND, CARROLL T., J.—

It appears that in the working of the system adopted by the railroad company there is a gap of from five to fifteen days left between the completion of a period of work by any given employee and the time when the instalment of wages for that period would be paid to him. Or, perhaps, it would be more accurate to say that the date taken for summing up a man's pay for any one pay day is from five to fifteen days before that pay day. The essential fact is that on a future pay day an employee may be entitled to a sum fully earned before that day. But merely because it has been fully earned on the given date, he is not entitled to it before the pay day; it is payable only in the future. The plaintiffs have been buying the rights in such earned

wages in the gap before the pay day, thus enabling employees to anticipate payment of their money; and in this instance they bought the defendant, Miller's, salary rights of $21.50 at a discount price of $20. A formal contract of sale was executed to evidence the transaction; and it is unquestionably in the form of a sale of the wages to be paid at the future date.

Against this transaction the defendants cite the provisions of the Act of 1906, Chapter 399, now Sections 11 to 17 of Article 8 of the Code of Public General Laws, which make invalid any attempted assignment of wages or salary (by way of "assignment, transfer, sale, pledge, mortgage or hypothecation") which is not made under the formalities there prescribed; and the assignment or sale in this instance was not made in compliance with those formalities. The plaintiffs recognize that the sale is invalid if this statute is valid, but they deny the validity of the statute. They consider it unconstitutional. And the whole question raised on the demurrer to the answer is whether the statute there cited is constitutional.

It is objected that in restraining a wage-earner in the disposition of his right to money actually earned the statute goes too far in depriving him of his property without due process of law. No objection is urged against restricting and safeguarding assignments of wages before they are earned. Even that, of course, is an interference with the freedom of wage-earners, but it has been found necessary, to protect them and their dependants from overreaching and unconscionable bargains, and legislation to this end has been found a proper exercise of the State's police power.

Mutual Loan Company vs. Martell, 222 U. S. 225.

In the case of Shaffer vs. Union Mining Company, 55 Md. 74, decided in 1880, the Court of appeals took another view of the constitutionality of such a protective restriction. It had to consider there the construction and effect of a statute which forbade payment of wages by mining companies in anything but money, the question in the particular case being whether this also prohibited assignments of wages to strangers, and the honoring of those assignments by the companies. In rejecting the construction which would

result in such a prohibition, the Court said, page 80:

"The legislature is always presumed to have intended a constitutional exercise of power; and laws will be so construed as to make their provisions lawful if possible. Cooley's Const. Lim. 221. It cannot be supposed the Legislature intended to impose a restriction upon these employes, which would have been an unconstitutional invasion of their rights." And this view is supported by Cooley's Limitations and other authorities of the time. It has not prevailed in later years, however, perhaps because the further development of extortionate money lenders dealing in wages has demonstrated the need of bringing the restriction on the freedom of the workmen within the police power. The Supreme Court of the United States in the case cited above (Mutual Loan Company vs. Martell) has adopted the opposite view on the same point of constitutional law, and that would seem to be a controlling authority now.

The evil guarded against would seem to exist in connection with any right to future payment, whether the money to be paid is at the time of assignment accounted earned or unearned. And once it is determined that a restriction of freedom in any respect is necessary to safeguard rights in future payment, I see no ground for distinction between rights in the earned and rights in the unearned wages. If it be objected that the statute does not confine its effect to wages payable in the future, but would restrict as well assignments of wages already payable, then the answer would seem to be that this is not a practical objection because the likelihood of a wage-earner's assigning wages which he himself can have in full for the asking is negligible, and that therefore it need not be dealt with in the statute.

Exact conformity to every imaginable situation is not, of course, requisite in a statute. It may omit reference to unlikely instances. "The classification need not be scientific nor logically appropriate." Mutual Loan Co. vs. Martell, 222 U. S. 235.

But the main objection to the statute involved in the present case is based on its inclusion of unlimited "salary" as well as "wages," within its protection. On this ground the Supreme Court of Illinois in the case of Massie

vs. Cessna, 239 Ill. 352, held a similar statute unconstitutional; and strong reliance is placed upon that decision in the argument here. The opinion in that case, after referring to the abridgement, which is permitted under the police power, of a man's right to dispose of wages to be received, draws a distinction between "wages" and "salary," and finds that the restriction in the statute on assignments of salaries of any amount whatever, possibly as high as $5,000 or $20,000 a year, extends the operation of the Act beyond the purpose to be effected, is therefore unreasonable in its classification of the earners restricted, and, so, an unconstitutional exercise of legislative power which renders the statute void. This seems to be the only case in which that exact objection was urged. In the case of Thompson vs. Erie R. R. Co., 207 N. Y. 171, a statute restricting assignments of "salary or wages due or to be earned in the future" was upheld without reference to such an objection.

The holding of the Illinois court is open to some criticisms. It may be questioned whether there is any real likelihood of assignments of instalments of salaries of these higher amounts, and so whether there was any reason for express exclusion of them from the restriction of the statute. It is not necessary that a statute hew to the line in express terms if there is no practical reality to hew away on the side in question. It is probably true, as the Illinois opinion says, that a bank president does not need protection from a "loan shark," and is not in the same class as laborer who works for $2 a day. But would he not have ceased to be a bank president, and to enjoy the large salary, long before he came to raise money by advance assignments of his salary? Such a man would almost be found borrowing on capital. Would not assignments of salary instalments, indeed, be inconsistent with the credit and commercial standing essential to the earning of such high salaries? It would seem permissible for the Legislature to think so from their information on the subject, and, that being true, permissible for them to set up their restriction in general terms without distinguishing away those not to be affected. Their act must be tested by practical reality rather than by verbal extent. In the case of Mutual Loan Company vs. Martell already cited (222 U. S. 225, 235) it was objected that the act there in question had left out some of the agencies, banks and loan companies, which engaged in the transactions which the act sought to restrain, and the Supreme Court, in reply, said, "We shall only repeat that the classification need not be scientific nor logically appropriate, and if not palpably arbitrary and is uniform within the class, it is within such discretion. The legislation under review was directed at certain evils which had arisen, and the legislature, considering them and from whence they arose, might have thought or discerned that they could not or would not arise from a greater freedom to the institutions mentioned than to individuals."

Various employers' liability acts have failed to confine their operation exactly to employees who were subject to the hazards with which the acts have been concerned but have passed the test of constitutionality nevertheless.

Second Employers Liability Cases, 223 U. S. 1, 52; M. J. & K. C. R. R. vs. Turnipseed, 219 U. S. 35, 41.

But there is another objection to the conclusion of the Illinois court, and this seems to me to be the correct one. The opinion of that court argues that the act is unconstitutional because its broad terms, interpreted to their full extent, carry the act beyond the purpose which it sought to accomplish, and by which any provision at all on the subject must be justified. But this discrepancy between the full breadth of statutory terms and the statutory purpose may be, and commonly is, treated in just the opposite way. The extent of the terms may be limited by the legislative purposes. That process leads right to the legislative intent, which is to be taken as the meaning of the words used. There may, of course, be judicial interpretations of a word which conflict with a later supposed use; but certainly there is no fixed, legal meaning of such a word as "salary." It means, of course, just what the Legislature had in mind in using it. The Court of Appeals has found two different meanings in one and the same word, "employee," when used in two statutes.

Casualty Insurance Company's Case, 82 Md. 568.

In the case of Commercial Association vs. Mackenzie, 85 Md. 132, 137, there are cited some striking examples of broad words confined in judicial interpretation to the purposes of statutes in which they have been used. And it was held in the Casualty Insurance Company's Case, 82 Md. 435, 566, that an adjuster, even though an employee of the corporation, was not one of the "employees" for whose protection the statute for preferred payment of wages and salaries (Art. 47, Sec. 15) was intended, and that consequently the broad word "employee" used in the statute should not be construed so as to include him.

"Now, it is clear, we think," said the Court of Appeals, "that the word 'employee' as used in the statute was intended to have a limited meaning, and that it cannot be applied in its broadest sense, or as including every one in the service or employment of a corporation or individual. The object of the statute was to provide for the payment of the wages and salaries due a certain class of persons to whom such wages or salaries were deemed always necessary for their support and maintenance. The statute first provides for the payment of the wages and salaries of clerks, persons rendering mere clerical services, then, of servants or employees. The statute did not mean by employees persons rendering services of a higher degree than clerks. * * * To hold otherwise would result in the inclusion of a large class of persons in the service of a company or individual as preferred creditors, though they are obviously not within the scope, purpose and object of the Code, under which provision is made for preference."

It is hardly to be doubted that the word "salary" in that statute would have been held limited by the purpose of the statute in the same way, if the question had arisen from that angle.

For these reasons I have disagreed with the conclusion that the reference to salary, without any express limitations, defeats the statutory restriction of sale of wages.

It is pointed out that the later "Petty Loan Act" conflicts in some respects with the Act of 1906 in so far as the latter applies to loans. As I see it, however, we are not required to adjust those differences now. The Petty Loan Act does not apply to sales. And the objection that the Justices of the Peace to whom one step in compliance with the Act of 1906 is referred, are no longer to be found in Baltimore City, would seem to present only a practical difficulty at most, which would not prevent compliance. Justices do exist in Baltimore City; the judges of the People's Court are all Justices of the Peace.

As I find no sufficient objection to the constitutionality of the Act of 1906 which invalidates a sale of wages such as is sought to be enforced by the bill of complaint, the demurrer to the answer which sets forth the bar of that statute is overruled.