## MARTIN v. LOULA.

[No. 26,386.   Filed February 23, 1935.   Rehearing denied June 10, 1935.]

*E. J. Call, Kenneth Call,* and *Harry Sharavsky,* for appellant.

*George Panea* and *Rudolph Loula,* for appellee.

TREMAIN, J.—This is an appeal by the appellant, a judgment debtor and resident householder of Indiana, from an adverse decision of the Lake Superior Court, Room 3, wherein appellant sought to enjoin appellees, justice of the peace and constable, from issuing and levying an execution upon ten per cent of the wages due appellant from his employer, pursuant to Chapter 61, Acts 1925, commonly known as the "1925 Garnishee Law."

Under the issues the validity of said Acts is presented for determination.

The title of Chapter 61 of the Acts of 1925 is: "An Act Concerning Executions and Exemptions." Section 1 of the act in substance provides that when a judgment

has been recovered in any court of the State of Indiana, and where the debts, earnings, salaries, wages, income from trust funds or profits are due and owing to the judgment debtor or which thereafter become due and owing to him from any individual, firm, etc., and where an execution had been previously issued on the judgment and returned unsatisfied, "the judgment creditor may file in the court in which said judgment was recovered, his affidavit stating such facts," and naming therein the individual, etc., indebted to the judgment debtor. If the court is satisfied with the facts stated in the affidavit, upon a hearing, either in term or in vacation, it shall be the duty of the court to make an order directing an execution against the debts, etc., described in the affidavit, and stating therein the name of the individual, etc., liable for the payment thereof to the judgment debtor, *notwithstanding any exemption law now in force.*" Provision is made for the service of the execution by either a constable or a sheriff, depending upon the court issuing it, and further provision is made for the enforcement of the execution against the garnishee residing in another jurisdiction.

Section 2 of the Act provides that the garnishee execution shall be a lien and a continuing levy upon the debts, etc., due and to become due to said judgment debtor "to the amount of not exceeding ten per cent thereof, *notwithstanding any exemption law now in force,* and said levies shall be a continuing levy until said exemption and costs are fully satisfied and paid by the application thereto of said percentage of such debts, . . ."

Section 3 makes it the duty of any individual or firm named in the execution, indebted to the judgment debtor, to pay over to the officer serving the same, not to exceed ten per cent of such debts, etc., until the execution is

wholly satisfied. It is further provided that if such garnishee shall fail or refuse to pay to such officer such percentage, he shall be liable to an action therefor by the judgment creditor.

Section 4 of the Act provides that either party may apply to the court, upon notice to the other party, for a modification of such execution. The same section provides that it shall be a matter of defense to any application for the issuance of an execution (1) that there is already another execution outstanding and unsatisfied, and (2) "No execution as provided for in this act shall issue on judgments on contracts made prior to sixty days after this act takes effect."

Section 5 provides for the issuance of execution against another individual, firm, or corporation not named in the original execution, and that such execution "shall be a lien on ten per cent of any such debts, . . ." owing to the judgment debtor.

Section 6 provides that the Act shall not apply (1) to any account or judgment which has been assigned or transferred, nor (2) to claims or demands which by law are specifically exempted; and section 7 provides that the Act shall not apply to contracts of sale unless the title has passed to the purchaser.

Section 9 repeals all laws in conflict with the provisions of the Act "to the extent of such conflict."

The assignment of error and the briefs in this and kindred appeals, now under consideration, assail the validity of the Act upon several grounds, chiefly among which is that it violates sections 22 and 23 of Article I of the Bill of Rights of the Constitution of Indiana, and the "due process" and "equal protection" clauses of the Fourteenth Amendment of the Federal Constitution; and by reason thereof is unconstitutional and void.

Section 22, Article I, of the Bill of Rights of our State Constitution, is as follows: "The privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability hereafter contracted." Pursuant to this constitutional injunction the Legislature, in 1852, enacted an exemption law allowing a resident householder an exemption of $300.00. This act remained in force until 1879 when the Legislature made the exemption $600.00, and in 1933 the exemption was fixed at $1,000.00, not more than $700.00 to be allowed in real estate or more than $600.00 in personal property. During that period other laws have been enacted affecting exemptions.

Does Chapter 61 of the Acts of 1925 violate Section 22, Article I, of our State Constitution? Does it exempt a reasonable amount of property from seizure and sale in all cases? The court is not unmindful of the rules of construction applicable to legislative enactments, and the presumptions to be indulged in favor of the same. At the same time the rights of our citizens are to be zealously guarded and protected in their person and property as defined and prescribed, extended or limited by the provisions of our Constitution. Pursuant to said section 22, this court has held uniformly that the constitutional provision relating to exemptions, and the statutes enacted by our legislature pursuant thereto are "based upon considerations of public policy and humanity; and that it was not alone for the benefit of the debtor, but of his family also, that such laws were enacted, and the same should be liberally construed." See *Pomeroy et al.* v. *Beach et al.* (1898), 149 Ind. 511, 49 N. E. 370; *The Union National Bank of Muncie* v. *Finley et al.* (1913), 180 Ind. 470, 480, 103

N. E. 110; *Markley* v. *Murphy* (1913), 180 Ind. 4, 102 N. E. 376; *Kelley* v. *McFadden* (1881), 80 Ind. 536; *Astley* v. *Capron* (1883), 89 Ind. 167; *Butner* v. *Bowser et al.* (1885), 104 Ind. 255, 3 N. E. 889; *Cowan Tent No. 61 et al.* v. *Treesh* (1927), 199 Ind. 24, 29, 155 N. E. 42; *Chatten* v. *Snider* (1890), 126 Ind. 387, 26 N. E. 166; *Cleveland, etc., R. Co. et al.* v. *Marshall* (1914), 182 Ind. 280, 105 N. E. 570; *International Text-Book Co.* v. *Weissinger et al.* (1903), 160 Ind. 349, 65 N. E. 521.

It appears from the title of Chapter 61 of the Acts of 1925 that it is intended to be an independent enactment of the Legislature and does not purport to amend former enactments upon the question of executions and exemptions. It provides that all laws in conflict with any of the provisions of the Act, are, to the extent of such conflict, repealed. As an independent act it gives a judgment creditor the right to levy upon ten per cent of all debts, earnings, salaries, wages, income from trust funds or profits of the judgment debtor, "notwithstanding any exemption law now in force." At the time of the passage of said act a resident householder was allowed $600.00 in value of property free from execution. It can not be doubted that "debts, earnings, salaries, wages, income from trust funds or profits" are property, for the purpose of the exemption laws, any item of which a resident householder has always been given the right to claim as exempt under the exemption laws of the state in force since 1852.

Section 22 made it mandatory upon the Legislature to provide by law for a reasonable exemption from debt to be allowed all resident householders. The section is not self-executing. It is left to the discretion and sound judgment of the Legislature to designate the amount of exemption. This it has done.

The court cannot say that the Legislature acted arbitrarily, or that chapter 61, Acts 1925, is in conflict with section 22, article I, of the bill of rights.

A consideration of the 1925 act in the light of section 23, article I, of the bill of rights and the equal protection clause of the Fourteenth Amendment of the federal Constitution presents a different question.

Section 23, article I, of the bill of rights of the state Constitution provides: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The last clause of the Fourteenth Amendment to the federal Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the law."

If the statute in question makes the exemption apply to one citizen and not to another in like situation, it is then an arbitrary or capricious classification. The rule of equal protection of law only requires that persons similarly situated shall be treated alike, or that the law shall apply to all who are in the same class. The Fourteenth Amendment was intended to secure equality of all rights, and to render unconstitutional all laws which may be construed as applying to persons or property arbitrarily and with discrimination, unequally or unjustly. 12 C. J. 1144; *State* v. *Barrett* (1909), 172 Ind. 169, 178, 87 N. E. 7; *City of Elkhart* v. *Murray* (1905), 165 Ind. 304, 75 N. E. 593; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 80 N. E. 529; *Fountain Park Co.* v. *Hensler et al.* (1927), 199 Ind. 95, 155 N. E. 465; *Toledo, St. Louis & Western R. Co.* v. *Long* (1907), 169 Ind. 316, 82 N. E. 757; *Kelso* v. *Cook* (1916), 184 Ind. 173, 110 N. E. 987; *Selvage* v. *Talbott* (1911), 175 Ind. 648, 95 N. E. 114; *Chicago, Indianapolis & Louisville R. Co.* v. *Railroad Comm., etc.*

(1910), 173 Ind. 469, 87 N. E. 1030, 90 N. E. 1011; *Sellers, Trustee, etc.* v. *Hayes et al.* (1904), 163 Ind. 422, 72 N. E. 119; *Cincinnati, Hamilton & Dayton R. Co.* v. *McCullom, Admr.* (1915), 183 Ind. 556, 109 N. E. 206; *Sperry and Hutchinson Co.* v. *State* (1919), 188 Ind. 173, 122 N. E. 584.

The authorities are numerous in this state upon the subject of classification for legislative purposes. In *Fountain Park Co.* v. *Hensler, supra,* this court had the subject of classification under consideration and said (p. 102):

> "A proper classification must embrace all who naturally belong to the class—all who possess a common disability, attribute or qualification, and there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those who it leaves untouched. (Citing authorities.) The legislature cannot take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered factions of the original unit as two classes, and thereupon enact different rules for the government of each." (Citing authorities.)

The garnishee act, chapter 61, Acts 1925, deals with the general subject of exemptions and the class of persons affected thereby—specifically debtors and wage earners—and designates that under certain conditions ten per cent of the "debts, earnings, salaries, wages, income from trust funds or profits" of one class may be taken for debt, *"notwithstanding any exemption law now in force,"* while another member of the same class may not be affected.

Suppose two debtors are similarly situated; each is the owner of property of the value of $600.00; one has his $600.00 in cash in his pocket or invested in goods and merchandise. It is exempt from execution on contract obligations. The other debtor lives in a rented

furnished apartment, and his $600.00 is on deposit in a bank or is loaned. Under the 1925 act it is not exempt. Or, both may be judgment debtors on the same contract obligation; the $600.00 owned by the first is wholly exempt, and the latter is not wholly exempt. One debtor is entitled to an exemption of one hundred per cent of his property; the other is entitled to an exemption of only ninety per cent.

Many examples could be cited illustrating the vice of the act and its conflict with section 23, article I, of our bill of rights and a denial of the equal protection clause of the Fourteenth Amendment, but the court deems it unnecessary.

Chapter 61, Acts 1925, violates section 23, article I, of the bill of rights of the Indiana Constitution as well as the equal protection clause of the Fourteenth Amendment of the Federal Constitution. It is not of universal application as to judgment debtors coming within its terms. The act only applies to certain classes and situations. It cannot be questioned that the Legislature has power to make reasonable and proper classifications of persons and property for the purpose of legislation, but such classification must not be capricious or arbitrary. The authorities cited above, and many others could be added, declare that to be valid such classification must be based on some justifiable distinction when considered in the light of the purposes and objects to be attained. The court recognizes that, for legislative purposes, it is within the province of the Legislature in the first instance to determine what classification is just and reasonable in view of the purpose to be attained. The court will not lightly substitute its judgment for that of the Legislature. A classification made by the Legislature will be sustained unless it is so manifestly and

unmistakably arbitrary as to leave no room upon which reasonable minds may differ.

Can the act under consideration be justified on the theory that certain debtors are entitled to favor or disfavor because of the nature of their business or employment? Public morals and the general welfare of society are not promoted by the provisions of the act. Considering the classification made in the light of the avowed purpose of the act, including the "privilege of the debtor to enjoy the necessary comforts of life," it is difficult to assume a state of facts which would afford a reasonable basis upon which a legal distinction between the classes can be made.

It is a matter of common knowledge that from the time of the enactment of chapter 61 of the Acts of 1925 to this date hundreds and thousands of our citizens have been without employment or their compensation has been so low that it has been necessary for them to ask for public aid. Chapter 61 undertakes to take from that class of our citizens ten per cent of whatever wage they may be earning and to pay it over to a judgment creditor, "notwithstanding any exemption law now in force." The act cannot be upheld upon a ground of public policy or humanity.

It is contended seriously and with much reason that the act in question violates other sections of our state Constitution, as well as the due process clause of the Fourteenth Amendment of the federal Constitution, which contention deserves serious and critical consideration. The view taken by the court, as herein expressed, makes it unnecessary to give further consideration to other alleged violations of the Constitution, federal or state.

For the reasons stated, chapter 61 of the Acts of 1925 is unconstitutional and void. The judgment is reversed

and the trial court is instructed to overrule appellees' demurrer to appellant's complaint.

## ON PETITION FOR REHEARING.

TREMAIN, J.—In their petition for a rehearing the appellees insist that the court erred in holding that chapter 61 of the Acts of 1925 was in conflict with section 23, article I, of the state Constitution. They assert that the decision improperly classifies property, and that the classification made by the act is between income and accumulated property. The amicus curia, in support of their contention, cites two authorities: *Jones* v. *Nicoll* (1911), 131 N. Y. S. 341; *Trapp* v. *Brown* (1918), 91 N. J. L. 481, 104 Atl. 302.

In the Jones-Nicoll case the New York court had under consideration the construction of the New York statute, similar to ours, in making a levy of an execution upon a salary due to a city official. From the facts stated in the opinion it appears that the official did not receive a salary or wage by the day, week, or month, but it is shown that the judgment debtor had a sum due to him in excess of $2,000.00 on account of services rendered to the city of New York and at that time in the hands of the comptroller. The Supreme Court held that the execution law providing for a levy upon ten per cent of the "wages, salary, or earnings" did not apply to the judgment debtor in that particular case; that the amount due to him was neither wages, salary, nor earnings; that under the New York statute "this section only affects a case where earnings, wages, or salary are paid in stated amounts, at stated times, or where the method of computation is such that it is so paid"; that the statute did not apply to sums paid in bulk. There is nothing further in the opinion that may be said to apply in the slightest to the case at bar. The

opinion illustrates the strict construction placed upon the New York statute.

Likewise the same strict construction is present in *Trapp* v. *Brown, supra.* Under a somewhat similar statute providing for a levy and continuing execution against the wages, debts, earnings, salary, income from trust funds, or profits due and owing to the judgment debtor, the Supreme Court of the State of New Jersey held that a levy could not be made upon a sum due to the judgment debtor for the rent of a building in Atlantic City, the amount of the rent due being $4,250.00. It is said that the statute does not include a claim of that nature. In discussing the New Jersey law that court said (p. 483) :

> "The act itself is in derogation of the procedure at common law, and takes from a debtor and his creditors, regardless of priorities, property *in invitum*, and without hearing or a notice thereof to creditors. The procedure, therefore, must be in strict compliance with the express requirements of the statute, and no intendment will be made to enable the court or a judge to assume jurisdiction, in the absence of the jurisdictional facts properly evidenced." (Citing authorities.)

The New Jersey statute, like the Indiana statute, provided for the issuance of the continuing execution upon an affidavit and proper showing by the judgment creditor, and without notice. The court there held that an affidavit made by plaintiff's attorney was not sufficient proof. The court pointed out that there was no explanation as to how the judgment debtor was entitled to rent for a building in the sum of $4,250.00 and not be the owner of the building, and why an execution had not been issued and levied upon the building; that there was no explanation as to the nature of the debtor's title to the building. The court clearly indicated the strict

rule to be enforced in such procedure by the following language (p. 484):

"The cogent force of this requirement becomes particularly apparent upon the meager facts presented by the petition, because while it becomes manifest that the defendant is the owner of property amply capable of satisfying an execution, for the amount involved, it is nowhere explained whether the property is encumbered, or what the equity of the defendant therein may be. Nor is it made apparent whether other and prior lienors to this judgment creditor may not be entitled to a preference over this plaintiff as to what particular fund. The result may be that upon a mere *ex parte* application of this nature, without notice or hearing to any party in interest, the vested rights of prior lienors may be eliminated and in effect subverted. In such a situation, a party whose interests would be injuriously affected might well insist that there was an absence of due process of law, and successfully invoke that provision of the fourteenth amendment of the federal constitution as a barrier to the deprivation of his rights."

It is held that the New Jersey law did not apply in that case. The Supreme Court was affirmed by the Court of Errors and Appeals of that state as reported in 107 Atl. 413 and 822.

The New Jersey opinion is more of an authority against the appellees than for them. Appellees seem to overlook the fact that this court in the original opinion held that the 1925 garnishee law granted to one class of citizens privileges and immunities which upon the same terms did not equally belong to all citizens. The court was not called upon and did not undertake to define the meaning and distinction of the words "debts, earnings, salaries, wages, income from trust funds, or profits," but it measured the statute by the standard set up in section 23, article I, of the Constitution and the equality clause of the Fourteenth Amendment of

the Federal Constitution. The appellees give little attention to that subject, but point out the numerous definitions and distinctions of the words "income," "earnings," "profits," "tangible and intangible property," etc., as defined by various statutes which apply the terms to uses and purposes of the particular statute.

Appellees concede necessarily that every resident householder is entitled to his exemption to the amount of six hundred dollars out of property owned by him at the time the execution is levied, but they contend that wages and earnings to become due in the future cannot be included for the reason that they are not property present at the time. They are correct in this contention. But when such future earnings, wages, and income become due, they will then become a present asset upon which an execution could be levied, and which the judgment debtor could claim as exempt.

It must not be overlooked that the statutes of this state afford many provisions for the collection of debts. Liens of various kinds are provided; proceedings supplementary to execution and other methods for attaching property and satisfying judgments. On the other hand the Constitution, section 22, article I, of this state, together with the householder's exemption laws and the statutory laws against the assignment of wages, the latter being included in sections 40-201 to 40-212, Burns 1933, provides for the protection of the wage earner and his family. All of these statutes must be construed in *pari materia* when dealing with the question of executions and exemptions. The constitutional provision for exemptions and the laws enacted pursuant thereto, together with the decisions of this court, are convincing that their purpose is to extend protection to those in need. In *Cleveland, etc., R. Co.* v. *Marshall* (1914), 182 Ind. 280, 105 N. E. 570, this

court had under consideration the statute prohibiting a husband from assigning his future wages without his wife's written consent. Section 4 of the act prohibits him from making such assignment without her consent. The court said (p. 285):

> "It is evident that in enacting §4, *supra,* of the act of 1909, our legislature was controlled by the same purpose which led the framers of our Constitution to command, by §22 of our bill of rights (Art. I, §22, Constitution), that liberal exemption laws be enacted, and which inspired the subsequent enactment of our many statutes designed for the protection of the wives and children of resident householders."

It has been the policy of our laws for years, and it is within the spirit of section 22, article I, of our Constitution that the unfortunate and needy shall be protected, and a construction most favorable to that class will be adopted by this court, especially in passing upon a law such as ch. 61 of the act of 1925, which provided for a procedure in derogation of the common law.

The appellees have pointed out no reason to convince the court that the act in question does not unjustly and unequally and arbitrarily discriminate between persons of the same class similarly situated. In strong language they condemn those who do not pay their debts and insist that the court's decision herein helps that class to be dishonest. The Constitution guarantees to all citizens the equal protection of the law. The court is not passing upon a moral question, but a legal one in construing the garnishee act. If it were a moral question the Constitution extends protection to the debtor at least equal to the protection it extends to the creditor (section 22, article I, Constitution). The creditor extends credit to the debtor voluntarily and in anticipation of profit to himself. He could withhold credit. It

so happens in many cases that credit is extended upon the moral risk and in the belief that the profit to be realized justifies the credit.

Appellee argues that it is of great benefit to the debtor to be able to secure credit upon his future unearned income; that the privilege of mortgaging his future earnings places him upon an equality with the man of property. Whether such privilege is or is not beneficial is, to say the least, quite controversial, and though that point is pressed with much vigor by the appellees in their brief, still this court is of the opinion that it is not to be called upon to pass upon such question in this proceeding.

Finding no reason to reverse the decision heretofore rendered the petition for rehearing is denied.